## Case No. 4,751.

**FERSON v. SANGER et al.**

[2 Ware (Dav. 252) 256; [1] 5 N. Y. Leg. Obs. 43.]

Circuit Court, D. Maine. Oct. Term, 1845.

[1] [Reported by Edward H. Daveis, Esq.]

S. Fessenden, for plaintiff.
C. S. & E. H. Daveis, for defendants.

WARE, District Judge. This is in substance a bill in equity seeking damages for an alleged fraud and misrepresentation, in the sale and assignment of a right of pre-emption of certain lands in this state. A preliminary question is presented, and was discussed at the argument, as to the admissibility of Webber as a witness in the cause. His deposition was taken, subject to the objection made when the interrogatories were filed. These are, first, that he was a party to the contract and ought to have been a party to the bill; and, secondly, if not a necessary party, that he has an interest in the cause.

The contract was in fact made by Webber in his own name. He appeared not only as a principal, but as the sole contracting party. He made the purchase, and the assignment of the bond was made to him. He held himself out as the purchaser, and was certainly considered by the defendants as a principal in the contract, if not the sole purchaser. And he continued to act as a principal, if not the sole party in interest, in the purchase. He undertook a journey to explore and examine the land, and after going on the land and satisfying himself as to its value, gave notice to Baker and Lindsey of his election to purchase the land in his own name, and obtained from them an extension of the time allowed by the bond to complete the purchase, though, when the transfer was made, it was by his direction made to Ferson. But he joined with Ferson in giving the notes for the purchase-money. In his deposition he says that he signed the notes as surety, but this does not appear by the notes themselves. He appears, therefore, from the beginning to the end, as a principal in the contract. Indeed, the only circumstance which could lead the defendants to a suspicion that Ferson had any interest in the contract, is the fact that he assisted Webber in raising the money to pay the price of the bond. It is true that Ferson wrote the assignment, and was present when the contract was made, but he does not appear to have taken any active part in it, but it seems to

have been made entirely by Webber. Ferson put his name to the assignment as an attesting witness. It is stated in the bill that Webber made the contract as the agent of Ferson, but the defendants were not notified of it at the time, and, from the fact that he signed the contract as a witness, they had certainly a right to infer the contrary, and that, if he was to have any interest in the contract, it was to come through Webber. Further, it appears to me to be a plain if not a necessary inference, from the whole evidence in the case, that Webber was not only directly interested in the purchase of the bond, but also in the purchase of the land. In his own deposition he admits that he contemplated taking an interest in the land to the amount of one-ninth, and in the letters which he wrote to Baker and Lindsey after the purchase of the land, he writes precisely as he would have done if he had an interest in it. In a letter of June 16th, 1838, signed by him and Ferson jointly, relative to the payment of the outstanding notes, they speak of their interest as joint. 'We are determined,' they say, 'having the land to offer as security, to make a desperate effort,' etc. The natural if not the necessary interpretation of such language is that the land was owned by them jointly. In all Ferson's letters he speaks, in the plural number, of others being interested with him, though he names no individuals. Baker, in his deposition, says that he understood that others were interested, to the number of seven in all, including Ferson and Webber. In truth, Ferson's letters distinctly show the fact that the land was bought on speculation, not with an intention of holding it, but to sell again at an advanced price. In his letter of May 9th, 1837, he says, 'we did not intend to keep it, but bought with the design of selling it;' and again, 'we have used every exertion to sell, from the moment of the lands being purchased,' and, May 24th, referring to the letter of the 9th, he says, 'it was adopted by a deliberate consultation of my associates.' Now it seems to me impossible to doubt, on the evidence in this record, that Webber was one of these associates, and that he was interested as a principal party in the contract with the defendants, in the purchase of the bond, as well as in the subsequent purchase of the land. The bond was assigned to Webber, but the legal title in the land was conveyed to Ferson, but in both cases, in trust for other parties who were jointly interested in the speculation. If so, then undoubtedly Webber is a proper if not a necessary party to the bill. It is not necessary in this case to inquire whether the bill is demurrable for the omission, but certainly one of the joint contractors cannot, by the omission of his name as a party plaintiff in the bill, be rendered competent as a witness, for he would be a witness in his own cause. On this ground I think Webber inadmissible as a witness.

Again, the deposition of Webber is objected to on the ground of interest. A part of the prayer of the bill is, that the defendants may be compelled to pay and deliver to the plaintiff the unpaid notes, given by Ferson and Webber to Baker and Lindsey to secure the payment of the price of the land. These notes are in the possession of Martin Gore, and, in an instrument executed by him, he covenants not to sue Webber on the notes; and there is another by Ferson, which may be construed perhaps to release him from his eventual liability on the notes, should they be paid by Ferson. But these notes have been indorsed, and Gore does not release the indorsers. If he calls on them and they pay the notes, they will have their remedy over against Webber. The covenants of Gore do not, therefore, release him from his ultimate liability on the notes, and of course he has a direct interest in having them delivered up and canceled. On this ground, also, my opinion is that the deposition of Webber is inadmissible.

Without the testimony of Webber, it is quite clear that this bill cannot be maintained, for he is the only witness to prove the fraud. But waiving this question, and considering the testimony of Webber as in the case and entitled to full credit, how will the case then stand? Suppose the contract to have been made, as charged in the bill, with Ferson, through Webber as his agent, it was a contract for the right and interest which the defendants had in the bond, and that only. The bond of Baker and Lindsey conveyed no interest in the land, not even in equity. It merely gave a right of pre-emption, and that to be exercised within thirty days from its date. It gave a mere right of action, by complying with the terms of the condition, of compelling the party, by a bill in equity, to a specific performance of the contract, or a right to damages at law for the non-performance. All that the assignment transferred was a right to perform the condition, and thus acquire a title to the land, or a claim for damages.

But the time limited for performing the condition is expired. This is not, therefore, a case in which the court can rescind the contract, and replace the parties in the condition in which they were before the contract was made. If the contract is rescinded, the right of pre-emption, which was the object of the contract, is gone. The thing sold is extinct, and has ceased to exist. All the relief, which the court can give, is damages for the alleged fraud, and this is substantially the prayer of the bill. This suit must, therefore, be considered as properly a bill to recover damages for a fraud in the sale and assignment of the contract. It cannot be for a fraud in the sale of the land, because the defendants never had any interest in the land which they could sell. The right to purchase the land was what was bought of the defendants, and the land itself was afterwards purchased of Baker and Lindsey. For this fraud, if there was

one, there is a perfect remedy at law. Will a bill in equity lie for damages only, arising out of fraud in a contract where no other relief can be given?

It is undoubtedly true, that equity has a general jurisdiction over matters of fraud. Fraud, accident, and trust constitute the ancient and broad foundation of its powers. Com. Dig. "Chancery," c. 2; 1 Bl. Comm. 92; 3 Bl. Comm. 431; 1 Story, Eq. Jur. 59. Lord Hardwicke, in the case of Chesterfield v. Janssen, 2 Ves. Sr. 155, said that equity had an undoubted jurisdiction to relieve in all cases of fraud, affirming the jurisdiction without any limitation. There is, however, at least one admitted exception to the universality of this proposition; it is, that equity has not jurisdiction to relieve against fraud in obtaining a will, and in Coop. Eq. Jur. p. 125, this is said to be the only case in which relief against fraud cannot be had in equity. The jurisdiction is affirmed in terms nearly as strong in 1 Story, Eq. Jur. § 184. With the exception that has been mentioned, it is stated that courts of equity may be said to possess a general, and perhaps a universal concurrent jurisdiction with courts of law in cases of fraud cognizable at law. Lord Eldon, in the case of Evans v. Bicknell, 6 Ves. 190, appears to have affirmed the jurisdiction of the court in terms quite as large and unqualified. That was a suit in equity for damages, a personal demand against the defendant; and he held that, provided an action might be maintained at law, relief could be had in equity. He remarked that it is an old head of equity, that if a party makes a representation to another person going to deal in a matter of interest on the faith of that representation, if the party who makes the representation knows it to be false, he shall make it good; and the rule equally holds, as it seems, that if he does not know whether it be true or false, if he affirms it to be true, he shall be responsible for its truth. 1 Story, Eq. Jur. § 193. And the doctrine of Lord Eldon, in this case, appears to have been fully concurred in by Chancellor Kent. Bacon v. Bronson, 7 Johns. Ch. 201.

These are certainly very grave authorities, and they assert the jurisdiction in terms exceedingly broad and comprehensive. And yet, notwithstanding this array of imposing authority, it seems that practically the jurisdiction is not maintained to the whole extent that is apparently claimed by them. The right to relief in equity, for fraud in the sale of personal chattels, seems to be distinctly denied by Chief Baron Alexander, in the case of Newham v. May, 13 Price, 752. 'It is not,' says he, 'in every case of fraud that relief is to be administered in equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud in the sale of a chattel, no one, I apprehend, ever thought of filing a bill in equity.' And the general terms, in which the jurisdiction is claimed in the passage in Story's Equity Jurisprudence before cited, it seems, must be received with considerable qualification in practice; for in a note to that section, it is said that courts of equity will not ordinarily give relief in cases of warranties, misrepresentations, and frauds in the sale of personal property. And in the second volume, in the chapter on compensation and damage (sections 794–796), the jurisdiction of the court is stated in terms much more limited. It is there laid down as a general proposition that courts of equity will not entertain jurisdiction over breaches of contract and other wrongs and injuries, that are cognizable at law, to give compensation or damages where these are the sole objects of the bill, but only as incidental to other relief, which is sought by the bill and may be granted by the court. For whenever the bill goes merely for damages, the remedy is perfect at law, and it is more proper that the damages should be ascertained by the jury than by the conscience of the judge. And it appears to me that Lord Eldon, in the case of Todd v. Gee, 17 Ves. 278, 279, had materially modified the opinion expressed in the case of Evans v. Bicknell. The bill, in that case, prayed the specific performance of a contract, and if the defendant was unable to perform it, which was the fact, then for compensation or damages for the non-performance. Lord Eldon said, that the court ought not, in a bill for specific performance, except under very special circumstances, to direct an issue or a reference to a master to ascertain the damages. That, he emphatically added, is purely law, and had no resemblance to compensation given out of the purchase-money, where a party is unable completely to fulfill his contract. 2 Story, Eq. Jur. § 796. Though in the former case he seems strongly to hold that, in fraud, a bill may be maintained whenever an action will lie at law. This doctrine of Lord Eldon is deliberately affirmed by Chancellor Kent, in Kempshall v. Stone, 5 Johns. Ch. 195, and is sanctioned in many other cases. Clinan v. Cooke, 1 Schoales & L. 22; Greenaway v. Adams, 12 Ves. 401; Russell v. Clarke, 7 Cranch [11 U. S.] 87. It is very pointedly asserted by the court of Kentucky, in Hardwick v. Forbes, 1 Bibb, 212 (quoted 1 Story, Eq. Jur. § 184, note). On a review of all the cases, the rule practically established seems to be, that a court of equity will not take jurisdiction of a suit for damages, when that is the sole object of the bill, and when no other relief can be given. The reason is, that in such a case the remedy is as complete and perfect at law as it is in equity. The same evidence will support the claim in both courts, and the assessing of damages is a subject more proper for the jury than for the court. But when other relief is sought by the bill, which a court of equity is alone competent to grant, and damages are claimed as incidental to relief which

cannot be obtained at law, then the court, being properly in possession of the cause for the purpose of relief purely equitable, will, to prevent multiplicity of suits, proceed to determine the whole cause.

Whether, in a case of damages for fraud, where a discovery is sought and obtained, the court will proceed to ascertain the damages on that ground alone, by directing an issue to the jury, or a reference to a master, has not perhaps been distinctly settled. The general doctrine, which is said to be pretty well established in this country, is that where the court has jurisdiction for discovery, and it is obtained, it will proceed to give relief, although the remedy at law is complete. 1 Story, Eq. Jur. § 71. It would seem to follow, that, in such a case, where the court has an undoubted jurisdiction to compel a discovery, after it was obtained, that the court would, in its own way, proceed to ascertain the damages and give the relief. This seems to be a regular and necessary inference from the general doctrine. And yet it is said by a great master of equity jurisprudence that there is strong reason for declining the jurisdiction, as damages ought to be ascertained by a jury, and such cases belong appropriately to courts of law. Id. § 72. But however this may be, it is clear that jurisdiction does not attach when the discovery is not obtained. In this case, the fraud is distinctly and unequivocally denied. It cannot be pretended that the bill can be maintained on any disclosure made in the answer.

But if the jurisdiction was as indisputable as it appears to me to be questionable, my opinion is, that in this case equitable relief is barred by lapse of time. It is true that proceedings in equity are not strictly within the statute of limitations, because the words of the statute apply to particular legal remedies by name, and do not, therefore, include proceedings in equity. But courts of equity have always held themselves bound by the spirit of the statute, and, therefore, where there is a legal title and right and it is barred at by law by the statute, equity, acting in obedience to the statute, will hold it barred in equity. In the present case, the legal bar had not been fully acquired, as six years had not elapsed when the suit commenced, and it may be said, as the remedy was not barred at law, it ought to be held as not barred in equity. But this, it seems to me, would be taking an imperfect view of the effect of time on equitable remedies. Lapse of time, in equity, operates not only as a positive bar, extinguishing the civil title or right while it leaves the natural right to have all that effect which the law allows it (and this is the case where the court acts in obedience to the statute), but it also has an operation in cases not within the statute, so that there has always been a limitation of suits in equity of every description. It is a rule adopted by the court, in the public interest and for the peace of society, to discourage the litigation of stale and antiquated demands. On this principle the court refuses to interpose its extraordinary authority, unless the party prosecutes his right with reasonable diligence. If he sleeps on his rights for an unreasonable length of time, the court will withhold its hand and leave him to his legal remedy. What delay will amount to what is technically called laches, necessarily depends on the nature and circumstances of the case. And this principle is applied, as I understand the practical doctrine of equity, not only to cases not comprehended within the statute in any sense, that is, to rights which are purely equitable, and for which the forms of law afford no remedy, but rights and titles which are within the statute, and over which the court has a concurrent jurisdiction with courts of law. In these cases it not only acts in obedience to the statute denying the remedy, when the statute bar is complete, but will, sometimes, on its own peculiar notion of justice, decline to interpose when the prescription is not fully acquired at law. In these cases the court does not pretend to act on the right, but is simply passive, and leaves the party to pursue his legal remedy. If he sleeps on his rights, until the course of events and the change of circumstances have put it out of the power of the court to administer that equality of justice between the parties, which, as a court of conscience, it is bound to do, it will decline to act at all. In cases of concurrent jurisdiction, where a party is at liberty to apply either to the tribunals of law or equity, a court of law is bound by the letter of the statute, because the statute speaks to that court in direct and positive terms. If the prescription is full, no remedy can be given; but if it wants a single day of being complete, it does not exist at all, and the court ex debito justitiae is bound to give the remedy. To refuse to, would be a denial of justice. But it is not so in equity. The statute does not address itself to courts of equity, and, therefore, equity, in strictness, is not bound by it. But then equity is not bound to interpose at all. It is no denial of justice to leave the party to such remedy as the law will give. Equity therefore says to the suitor, that while the statute bar may not be imperative, yet that in equity there is a prescription independent of the statute, not fixed to any invariable time, but depending on the nature and circumstances of the case, which may be a bar to equitable, when it would not be to legal, relief. In these cases of concurrent jurisdiction, equity will not interpose with her extraordinary powers unless the matter is brought before the court in such time as will leave to it the power of adjusting all the material equities involved in the case, in such a manner that, while justice is done to one party, injustice will not be done to another. If this cannot be done, and this is

the consequence of the delay, equity will not act on the right, but leave it for the decision of law.

If this be a correct view of the practice of equity in cases of concurrent jurisdiction, as to the influence of lapse of time on equitable remedies, it will apply with great force to the facts of the present case. This was a sale of a right of pre-emption of certain lands, that is, of a chose in action. The gravamen of the bill, when reduced to its last analysis, is that the plaintiff was induced, by the fraudulent misrepresentation of the defendants, to pay for their right an exorbitant price. But after the purchase of the bond, the plaintiff went on the land, by his agent, for the purpose of satisfying himself by actual examination by a person who was well acquainted with timber lands, and, after such examination, deliberately made the purchase of the land. It cannot be pretended that the purchase of the land was made principally, if it was at all, on the strength of the representations and certificates of the defendants. The plaintiff chose to trust his own eyes, or those of his confidential agent, and, in fact, co-purchaser of the bond, and it was on the strength of his representations and the additional certificates he obtained, that the bargain for the land was ultimately closed. It is quite clear that the plaintiff, by this bill, can claim no relief directly for damages he may have sustained by the purchase of the land. All he can pretend to is, that he was induced by the fraud of the defendant to pay too much for the bond, and that, if the defendant made false representations, he is bound to make them good. My opinion is, that he is too late in claiming relief for this damage in a court of equity. He should have made his claim before the right of pre-emption expired, or, if not, at least while he had a title to the land, and the power of restoring to the defendants what he received of them, that is, the right to take the land at the bond price. Instead of that, he has held the land for nearly six years, has made constant efforts to resell, demanding a higher price than he gave, has gone on to operate on the land and taken off a large quantity of the timber, has mortgaged it, and finally allowed the mortgagees to foreclose and extinguish his title. Under these circumstances, my opinion is, that even admitting the fraud (and with respect to Sanger, the only defendant who has answered, Richardson being dead and Stackpole having demurred, the evidence entirely fails, as it appears to me, in making actual fraud) but even admitting it, my opinion is, that the plaintiff is barred of equitable relief by his own laches.

The result of my opinion is, that the bill must be dismissed with costs for the defendant.