## WILSON vs. ANTHONY.

A bond payable after date without any stipulation for interest, does not bear interest until it is due; and so, if assigned, to be collected by the assignee and applied in payment of claims held by him against the assignor, the assignee cannot be held to account for interest until the maturity of the bond.

Where there is a legal and equitable remedy in respect to the same subject matter, the latter is under the control of the same statute bar as the former; and in such cases the Court of chancery follows the statute of limitations.

The statute of limitations cannot be insisted on as a bar in equity without being pleaded, or in some form relied on as a defence, in the pleadings.

Where the statute is not relied on as a defence, or where there is no statute of limitations, a Court of equity will not aid in enforcing stale demands, where the party has been guilty of negligence and slept upon his rights. But no precise rule, applicable to all cases, as to what lapse of time will constitute a demand a stale one, can be laid down.

W. and A. signed an instrument of writing: that each had placed in the hands of W. an equal amount of money to be laid out by him in negroes on their joint account, to be equally divided after deducting expenses:—It is reasonable to suppose that if there had been an express agreement, that W. should be paid for his services in purchasiug the negroes, it would have been inserted in the instrument which was made the evidence of the contract, and if the law would imply that he should be paid for such services, such implication would arise upon a showing that he had performed the services faithfully, and with such skill as the nature of the undertaking required.

*Appeal from the Circuit Court of Pulaski county in Chancery.*

Hon. WILLIAM H. FEILD, Circuit Judge.

PIKE & CUMMINS for the appellant.

FOWLER for the appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was a bill filed by Anthony against Wilson, in the Pulaski Circuit Court, for an injunction, and for settlement of ac-

counts, etc. Upon a report of the master stating an account between the parties, the Court below rendered a final decree in favor of Anthony for $208, from which Wilson appealed to this Court.

The case comes up upon exceptions to the master's report, made by Wilson in the Court below and overruled by the Court. Such of them as are insisted upon in the argument here will be reviewed.

1. It appears from the pleadings, that on the 5th of October, 1838, Anthony assigned to Wilson a bond executed by Brownfield and Thorn, to one Cotter for $500, dated 14th March, 1838, due at six months, and which Cotter had previously transferred to Anthony, with a reservation of $154 66 for his own use when collected. That when Anthony assigned the bond to Wilson, by an agreement between them, the same reservation was made in favor of Cotter, and the remainder of the bond, when collected, was to be applied by Wilson to the payment of claims which he held against Anthony. That Wilson collected the bond on the 1st of March, 1839.

The master in his report charges Wilson with $345 34, being balance of principal of the bond after deducting amount reserved for Cotter; and with interest thereon from the 14th of March, 1838, the date of the bond, to the 1st of March, 1839, the time when it was collected, making $23 74, at six per cent. But the bond was not due until the expiration of six months after its date, and there being no stipulation for interest from its maturity, it, of course, bore none until it was due; and Wilson could not have legally collected, and was not properly chargeable, with interest except from the maturity of the bond to the time of its payment to him. He should have been charged therefore with $9 55 interest, instead of $23 74, being an excess in favor of Anthony of $14 19, which must be corrected.

2. In the bill, Anthony insisted upon charging Wilson with the amount of an account, as follows:

Mr. Emzy Wilson,

       To James C. Anthony    Dr.

| | | |
|---|---:|---:|
| 1838. To this sum, the price of a bull of mine which you killed | $35 | 00 |
| To 1½ bushels of Timothy seed $7 | 10 | 50 |
| " one large corn knife lent you, which you failed to return | 2 | 50 |
| | $48 | 00 |
| To interest on do. | 20 | 16 |
| | $68 | 16 |

Wilson, in his answer to the bill, besides otherwise disputing this demand, expressly interposed the statute of limitations as a bar to Anthony's right to recover the amount of the account, or any item in it.

The master in his report charged Wilson with the amount of the account, and the interest thereon as above made out. The bill was filed on the 20th of October, 1845; and Anthony, in making out the account, seems to have treated it as due, and calculated interest upon it, for about seven years before the filing of the bill. To an action at law upon such an account, (supposing the first item to have been founded upon contract express or implied, and not upon a mere trespass) the period of limitation fixed by the statute is three years. It is a general rule that where there is a legal and an equitable remedy, in respect to the same subject matter (as in cases of account or other debts) the latter is under the control of the same statute bar as the former. In such cases the Court of chancery follows the statute of limitation. *Harris vs. King*, 16 *Ark. R.* 124; *Sullivan vs. Hadley et al. Ib.* 146; *Story's Eq. Plead. sec.* 756.

Saying nothing of the sufficiency of the evidence to establish the account, it was clearly barred by the statute of limitations, and there was nothing alleged in the bill, or proven at the hearing to take it out of the statute. The master should not therefore have charged Wilson with the amount of this account.

3. It appears from the pleadings and evidence that, in the latter part of the year, 1838, Wilson was making arrangements to go into the State of Missouri for the purpose of purchasing slaves for himself and others. Anthony, who also desired to purchase some slaves, was about to send his son Philip on a similar mission, but Wilson agreeing to purchase them for him, they entered into the following written contract:

" We, Emzy Wilson and James C. Anthony, have each put into the hands of the said Emzy Wilson, six thousand eight hundred dollars to be laid out in negroes by the said Wilson for joint account of the said Anthony and Wilson, and when the negroes arrive to be equally divided by the said Anthony and Wilson after deducting the expenses to be incurred in purchasing the negroes.

21st Dec'r, 1838."

Which instrument was signed by the parties.

In pursuance of the above contract Wilson went to the State of Missouri and purchased twenty-three slaves with the joint funds of himself and Anthony; and on his return, some time in February, 1839, they made a division of them, Anthony receiving ten of the slaves at the aggregate value of $6,437 50. Deducting this sum from $6,800, the amount of money placed in the hands of Wilson by Anthony, and it left a balance in favor of Anthony of $362 50, which he insisted in his bill should be charged against Wilson, less one half of the expenses incurred by Wilson in purchasing and bringing the slaves from Missouri.

Wilson insisted, in his answer, that Anthony's portion of the expenses, together with a reasonable compensation for his personal services in purchasing the slaves, more than consumed the above balance in favor of Anthony; which he alleges was understood when the division of the slaves was made between them, etc.

The master in his report, upon the pleadings and evidence before him, credited Wilson with $222 62½ as Anthony's portion of the expenses of purchasing the slaves, etc., but allowed Wilson nothing for his personal services.

Several exceptions taken by Wilson to this branch of the master's report, and overruled by the Court below, are urged by his counsel in the argument here.

(a) It is objected, first, that the sum allowed to Wilson by the master on account of expenses, etc., was too small. The sum allowed was more, perhaps, than the depositions taken in the cause, and read upon the hearing, would have warranted, the master having adopted as a guide a memorandum book kept by Wilson, in which the expenses of the trip were noted in the hand writing of a man employed to accompany him.

(b) It is moreover objected, that the master allowed Wilson no compensation for his personal services.

The bill alleges that Wilson volunteered his services gratuitously; which he denies, and affirms that it was understood between him and Anthony that he was to be reasonably compensated. The depositions are silent as to this issue. The written contract between the parties, which is the best evidence of the terms of the agreement, and the only evidence before us, contains no stipulation for the compensation of Wilson for his services. It provides for the payment of the expenses of the trip: and if there had been an express agreement of the parties that Wilson was to be paid for his services, it is but reasonable to suppose that it would have been inserted in the instrument which was made the evidence of the contract. If the law would imply an obligation on the part of Anthony to compensate Wilson, such implication would arise upon a showing that he had performed the services faithfully, and with such skill as the nature of the undertaking required. But the depositions conduce to prove that the slaves purchased for Anthony, or allotted to him in the division, were a *very sorry lot of negroes*. Upon this state of case, we are not disposed to overrule the judgment of the master, and of the chancellor, refusing to allow Wilson compensation for his services in purchasing the slaves.

(c) It is furthermore insisted that it was proven on the part of Wilson, that at the time the slaves were divided, a final settlement was made between the parties in respect to the balance

of Anthony's money remaining in Wilson's hands, after deducting the value of the slaves received by Anthony. The testimony of Boyle, relied upon by the counsel of Wilson to establish such settlement, is too loose and indefinite to be satisfactory, and it is weakened by the depositions of several other witnesses, who state that he was prejudiced against Anthony, etc.

4. Finally, it is urged by the counsel for the appellant, that the claim of Anthony to any balance of the money put into the hands of Wilson by him, that remained after deducting the value of the slaves allotted to him, and his portion of the expenses of the trip, was barred by the statute of limitations.

As to this demand, Wilson did not interpose the statute of limitations, as a defence, by demurrer, plea or answer, but controverted the claim on the grounds noticed above.

The statute of limitations cannot be insisted on as a bar in equity, without being pleaded, or in some form relied on as a defence, in the pleadings. *Hickman vs. Stout,* 2 *Leigh R.* 6; *Hudsons vs. Hudsons's ad.,* 6 *Munf.* 356; *Dcy vs. Dunham,* 2 *John. Ch. Rep.* 191; *Crutcher vs. Trabue,* 5 *Dana* 82; *Whitney et al. vs. Whitney, Ib.* 331; *Van Hook vs. Whitlock,* 2 *Edwards Ch. R.* 307; *Prince vs. Heylin,* 1 *Atk.* 494; *Calvert vs. Millstead's adx.,* 5 *Leigh* 8; *Maury vs. Lewis,* 10 *Yerger R.* 118; *Jones vs. Childs,* 4 *J. J. Marsh.* 120.

The reason of the rule is, that the complainant should have notice of the defence, in order that he may have an opportunity of bringing his case within the exceptions of the statute, by special replication, or, according to the modern practice, by an amendment of his bill, and not to be taken by surprise at the hearing. *Hudsons vs. Hudsons' ad.,* 6 *Munf.* 356; *Maury's ad. vs. Mason's ad.,* 8 *Porter* 227; *Piatt vs. Vattier et al.,* 9 *Peters R.* 415; *Miller's heirs, etc. vs. McIntyre,* 6 *Ib.* 61; *Digest ch.* 28, *sec.* 44.

But where the statute is not relied on as a defence, or where there is no statute of limitation, a Court of equity will not aid in enforcing stale demands, where the party has been guilty of negligence, and slept upon his rights. The chancellor refuses

to interfere after an unreasonable lapse of time from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscured by time, and the evidence may be lost. *Piatt vs. Vattier*, 9 *Pet.* 405; *McKnight vs. Taylor*, 1 *How. U. S. R.* 161; *Wagner vs. Baird*, 7 *Ib.* 234; *Johnson vs. Johnson*, 5 *Ala.* 97; *Taylor vs. Adams' ad.*, 14 *Ark. R.* 62.

No precise rule, applicable to all cases, as to what lapse of time will constitute a demand, a stale one, in the sense above indicated, can be declared. Each case must, to some extent, depend on its own circumstances, and will be construed or modified by them, and by analogy to other known and settled rules of law. *Johnson vs. Johnson*, 5. *Ala.* 97.

In this case, a division of the slaves was made between the parties in February, 1839, after which Anthony, no doubt, had a right of action against Wilson for any balance of money remaining in his hands, and belonging to Anthony, by the terms of the contract under which Wilson originally received it. Three years would have been the period of limitation to such action, after demand and refusal, or its equivalent. Anthony having resorted to equity to enforce the claim, had Wilson interposed the statute as a defence, by demurrer, plea or answer, the chancellor would have acted in obedience to the statute, and sustained the defence as a bar. But Wilson did not, in any form, plead the statute in bar of the remedy, and therefore was not entitled to the benefit of it, as we have seen, upon the hearing. If, however, the claim is a *stale* one, in the sense above indicated, the relief sought by Anthony should not be granted.

If we suppose that Anthony's right of action accrued in February, 1839, immediately after the division of the slaves, over six years elapsed before the bill was filed, (Oct. 1845.) Had this been the only unsettled business between the parties, the delay of Anthony to file his bill for so long a time, might have been regarded as unreasonable, and placed his claim in the class of stale demands in equity. But it appears that there were

other unsettled matters between the parties. Wilson held several notes upon Anthony: and had also received from him a collateral claim, which he had agreed to collect and account for, etc.; and there appears to have been no settlement between them in respect to these matters before the bill was filed. Upon all the facts of the case, we are not disposed to disturb the decree of the chancellor entertaining this demand.

For the errors above indicated, however, the decree must be reversed, and a decree entered here, and certified to the Chancery Court of Pulaski county, in favor of Anthony for $125 65 with interest from the first of March, 1839.