# CHARLESTON.

## SOMMERS *v.* WARD.

Submitted June 18, 1895—Decided November 13, 1895.

1. TAX SALES—DELINQUENT REAL ESTATE—FRONT DOOR OF COURT-HOUSE.

    In proceedings to sell real estate as delinquent for the non-pay- ment of taxes, the sheriff should not only advertise such sale to take place at the front door of the court-house, but the sale should take place at such front door, to constitute a legal sale.

2. TAX SALES—DELINQUENT LISTS—FRONT DOOR OF COURT- HOUSE.

    In order that lands may be legally returned delinquent, a copy of the delinquent lists must be posted at the front door of the court-house of the county at least two weeks before the session of the county court at which they are presented for examination.

JOHN BASSEL and E. D. TALBOTT for appellant, cited Blackwell on Tax Titles (4th Ed.) margin page 275.

L. D. STRADER for appellee, cited 1 Sto. Eq. Jur. § 64 c.

ENGLISH, JUDGE:

This was a suit in equity brought by Martha A. Sommers against J. B. Ward for the purpose of setting aside a certain tax deed which was executed by J. D. Wilson, clerk of the county court of Randolph county, W. Va., to said J. B. Ward, on the 26th day of November, 1892. The principal grounds relied upon by the plaintiff as invalidating said deed were that although the land in controversy was advertised (as delinquent for the non-payment of taxes for the years 1883 and 1884) to be sold at the front door of the court-house of said county on the 14th day of December, 1885, yet said land was not sold at the front door of said court-house, as advertised by him, but inside of the court-house, at the further corner from the said front door, with the front door and all other doors leading into the court-room closed. Another ground relied on by the plaintiff is the alleged fact that the records of the clerk's office of said county court failed to show that said land was ever posted at the front door of the court-house for two weeks before the sitting of the county court when said delinquent lists were passed upon, as required by law. Issue was taken on the allegations of the bill, depositions were taken and filed, and at the hearing the plaintiff's bill was dismissed, and the plaintiff applied for and obtained this appeal.

Did the court err in dismissing the plaintiff's bill? Our statute, section 6 of chapter 31 of the Code, is express and imperative that: "Within ten days after receiving such lists (meaning the delinquent lists) the sheriff or collector shall make out and cause to be published, once in each week for four successive weeks, in some newspaper published in the county, prior to the day of sale, an abstract of such sale in form or effect as follows: 'Notice is hereby given that the following described tracts or lots of land in the county of ——— which are delinquent for the non-payment of taxes for the year or years 18— will be offered for sale by the undersigned (sheriff or collector) at public auction at the front door of the court-house of said county be-

tween the hours of ten in the morning and four in the afternoon on the ―――― day of ――――, 18―,' " *etc.* In this instance the sheriff of Randolph county appears to have advertised the land to be sold at the front door of the courthouse of that county, but the evidence shows that he sold it at a different place, to wit, inside of the court-house, with the doors closed, with the entire width of the courthouse between the place of sale and the front door, Lee D. Caplinger becoming the purchaser. And he states, in response to a question asked him, that he was in the court-house, up near the clerk's desk or judge's bench, when he purchased said land; that the sheriff who was selling the land was on the clerk's desk in the court-house. Z. T. Chenowith, the sheriff, who made the sale, testifies that he commenced selling at the front door of the court-house, on the outside, and on account of the severity of the weather he adjourned to the inside, and back part of the court-room, left hand corner. That the land in controversy was sold from the clerk's desk, inside of the court-room, is shown by the evidence of the purchaser, who would be most likely to remember the locality of the sheriff and himself at the time the sale was made. Was this sale made in pursuance of the requirements of the statute? The legislature surely had some object in view when it prescribed that notice should be published for four successive weeks, in some newspaper published in the county, that the tract of land would be offered for sale by the sheriff at public auction, at the front door of the court-house of said county, between the hours therein named. The object manifestly was that the public should be advertised of the time, place, and manner of sale. The front door of the court-house was not only a public place, but it was the place at which sales by the sheriff and other officers were usually made. A number of such sales might be made inside of the court-house, with closed doors, and the public passing by be utterly unaware of the fact. There would be no outcry, and no auction in progress, at the place named in the advertisement, and they might well conclude that no sale was going on. It may be possible that no one passing the court-house at the time of the sale might wish to become a purchaser, yet the law re-

quires that the opportunity must be afforded them, should
they so desire; and if a sale of delinquent land, advertised,
in accordance with the requirements of the statute, to take
place at the front door of the court-house, is made, as was
done in this case, at another and different place, we can but
hold that the object of the law has been defeated, and no
legal sale has been effected, and no title could be acquired
to the land purchased at such sale.

It is further suggested that the court erred in not hold-
ing that said tax sale was void by reason of the fact that
the delinquent list was not posted for two weeks prior to its
examination by the county court. Now, as to this assign-
ment, while it is true that the statute requires such list to
be so posted for that length of time, there is nothing in the
statute that requires the fact to be set forth in the order of
court, and the testimony in the cause is silent as to whether
the sheriff posted such notice in accordance with the re-
quirements of the statute or not. The allegation is put in
issue by the answer, and there is no proof of the fact, and
for this reason we must regard this assignment as not well
taken.

On the other hand, however, the appellee, J. B. Ward,
filed an amended and supplemental answer, in which he al-
leged, by way of affirmative relief, that the sheriff of said
county who returned the land in controversy delinquent for
the years 1871 and 1873, in the name of John S. Hoffman
and John McKinley, did not post said delinquent lists at
the front door of the said court-house of said county, as
prescribed by the statute, before he presented said list for
the year 1871 to the board of supervisors of said county,
and said list for the year 1873 to the county court of said
county, and charged that neither said board nor county
court had jurisdiction to receive or accept said delinquent
list and make it part of the public record of said county,
in pursuance of which the said land could afterwards be
sold for the non-payment of the taxes thereon, by the sher-
iff of said county, in the year 1875, and that the sale and
deed made in pursuance of said purported delinquency are
void, and did not pass any title in said tract of land to
John R. Boggess, and for that reason he never passed any

title to the plaintiff by reason of his deed of conveyance to her, as against the appellee or his immediate vendor, John S. McKinley. To this supplemental answer a general replication was filed, but no special reply in writing was filed to said amended answer; and under section 36 of chapter 125 of the Code, every material allegation of new matter in said answer, constituting a claim for affirmative relief, must, for the purposes of the suit, be taken as true, and no proof thereof required. Under the pleadings presented by the record, then, the fact is conceded that the sheriff did not post the delinquent lists for the years 1871 and 1873 for two weeks before the session of the tribunals to which they were to be submitted, as required by statute. It is true, the allegations contained in said supplemental answer were not made until after the lapse of twenty years from the time the omissions on the part of the sheriff occurred which are relied on to defeat the tax title of John R. Boggess, but the question of *laches* is in no manner raised by the pleadings; and while it has been held in *Sullivan* v. *Railroad Co.*, 94 U. S. 807, that it is not necessary to let in a defence that the claim is stale, that a foundation should be laid by any averment in the answer, yet, if the defence had been formally relied on, I do not think it would avail in this case, since the defendant, Ward, was not called on to defend his title until this bill was filed by the plaintiff, attacking the same, and we do not think the question of *laches* could be urged to said Ward's prejudice. What, then, is the result, if, as we think, the proceedings to subject this tract of five hundred acres of land to sale as delinquent for the non-payment of taxes in both instances were abortive —the sale to said Boggess, because the delinquent list was not posted at the front door of the court-house, as required by statute; and the sale to said Ward, because the land was not sold at the front door of the court house, where it was advertised to be sold, and where the law required it to be sold? No legal sale of the land having taken place, the title to the land would still be in Hoffman and McKinley. At the time Ward became the purchaser, it was sold as the property of J. R. Boggess, and, if the sale had been legal, said Ward would have acquired, not only the title of J. R.

Boggess, in whose name the land was returned delinquent, but, under section 25 of chapter 31 of the Code, also all such right, title, and interest therein of any other person or persons having title thereto, who had not, in his or their own name, been charged on the land books of the proper county or assessment district with the taxes chargeable on such real estate for the year or years for the taxes of which the same was sold, and should not have paid the same as required by law. But, as the sale was not made in accordance with the requirements of law, the said Ward by his purchase, acquired neither the title of J. R. Boggess, which appears to have been a defective one, nor that of Hoffman and McKinley. The plaintiff, however, by her deed from the executors of J. S. Hoffman, had the title of Hoffman to at least the undivided moiety of the land, which gave her the right to assault this deed made to Ward in pursuance of an illegal delinquent sale; and my conclusion is that the court erred in dismissing her bill, and the decree complained of must be reversed and the case remanded, with instructions.

But this decision is not to affect the tax title of said Ward to the undivided half of the land that he purchased from said McKinley, nor is it to affect the John R. Boggess tax title to the remaining portion of the land which M. M. Sommers acquired from Hoffman's executors.