STURDIVANT *v.* COOK.

Opinion delivered December 24, 1906.

1. EXECUTION SALE—INNOCENT PURCHASER.—One who purchases at her own execution sale and credits the amount of her bid on the judgment is not an innocent purchaser for value, but takes title subject to prior equities of other persons. (Page 282.)

2. EQUITY—LACHES.—Where there has been an unexplained delay of nine years in asserting a lien on land, and where the lien claimants have permitted defendant to prosecute expensive and troublesome litigation over the title without asserting their claim, they will be held to be barred by laches. (Page 283.)

3. SAME—REQUIREMENT THAT PLAINTIFF DO EQUITY.—Where a debtor's interest in a tract of land was sold under judgment against him, equity will not permit him subsequently to enforce a prior lien upon the same land in favor of himself as one of the heirs of his father, at least without requiring him to do equity by paying the judgment. (Page 285.)

4. MORTGAGE—MERGER OF LIEN AND DEBT.— As one can not be both creditor and debtor at the same time, the effect of a mortgagor acquiring the mortgagee's interest by inheritance and purchase is merely to extinguish the debt, and the mortgage lien can not be used to cut out the intervening rights of third persons. (Page 285.)

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*W. C. Rodgers* and *W. P. Feazel,* for appellants.

1. The plea of limitation is personal to the debtor. If he elects to waive it, or for any reason refuses or neglects to claim its benefits, a stranger will not be heard to complain. 45 W. Va. 620; 44 W. Va. 229; 71 Ark. 302.

2. As to the litigation between appellee, Mrs. Cook, and W. A. J. Sturdivant, not having been a party to that suit, J. S. Sturdivant was not bound by anything decided therein. 13 Ark. 214; 17 Ark. 203; 54 Ark. 273; 60 Ark. 369; 64 Ark. 330;

65 Ark. 278; 66 Ark. 305; 75 Ark. 524. The heirs of J. S. Sturdivant, when he died owing no debts, became absolute owners of whatever rights he had.

3. Even if the conveyance from J. B. Sturdivant to W. A. J. Sturdivant was fraudulent, it was effective to pass whatever title he had. 11 Ark. 411; 30 Ark. 453; 47 Ark. 301; 67 Ark. 325. And, purchasing at her own execution sale, paying nothing on her bid, but crediting the amount thereof on her judgment, Mrs. Cook was not an innocent purchaser. 31 Ark. 252; 32 Ark. 346; 33 Ark. 621; 34 Ark. 85; 72 Ark. 494. The law of estoppel does not apply here. That can only arise where injury has resulted, and equity does not require that one having title to, or a lien upon, property should seek out a party who is about to purchase it from a supposed owner and inform him of his title. 63 Ark. 289, 300. Nor would it require him to do so after the purchase.

4. The possession by W. A. J. Sturdivant, and his tenants, of the land was notice to the defendants of the nature of their claim. 68 Ark. 150; 66 Ark. 167; 26 N. J. Eq. 70; 3 Paige, Ch. 421; 13 Ves. 114; 4 N. H. 307; 40 Ala. 486; Wade on Notice, § 279. "Such possession is equivalent to actual notice of the title, rights or equities of the occupant." 76 Ark. 25. Moreover, the sale at which Mrs. Cook purchased was forbidden by W. A. J. Sturdivant, which was also actual notice.

5. Whether the conveyance from W. A. J. to J. S. Sturdivant was a deed or a mortgage, appellees are in no position to complain. They are not injured, and they can not complain, even at a fraud which does not result in injury to them. 43 Ark. 454; 53 Ark. 275; 71 Ark. 305; 74 Ark. 68.

*D. B. Sain* and *McRae & Tompkins,* for appellee.

1. The interest in the land proceeded against in this suit was conveyed by J. B. to W. A. J. Sturdivant by a deed which has been set aside for fraud. Since that deed was void for fraud, W. A. J. Sturdivant could pass no title to his father, and neither he nor the other heirs could acquire any from the father.

2. The claim is stale, and is barred by limitations. 43 Ark. 469; 19 Ark. 21; 16 Cyc. 150; 46 Ark. 25; 74 Ark. 316. The debt was long since barred; and if the alleged deed was a

mortgage, it was barred when the debt was barred. Kirby's Digest, § 5399. The burden was on appellants to show that they were not barred. 69 Ark. 311; 70 Ark. 598.

3. A mortgage is not a lien unless acknowledged and recorded, and is not notice even against one with actual notice of its existence. Kirby's Digest, § 5396; 9 Ark. 112; 49 Ark. 457; 71 Ark. 517; 22 Ark. 136.

4. Although a purchaser at his own execution sale is not an innocent purchaser, yet he is a purchaser for value, not a purchaser *mala fide,* and ought to be protected against latent equities of which he had no notice. 97 Cal. 575; 15 L. R. A. 45. The case relied on by appellant, 31 Ark. 252, in so far as it holds that all purchasers at execution sales are not innocent purchasers, has been overruled. 58 Ark. 252.

5. The testimony of J. S. Sturdivant that W. A. J. Sturdivant owned the land estops appellants to claim an interest now. Thomp. Tenn. Cases, 145; 39 Tenn. 605; 130 N. Y. 662; 35 L. R. A. 743; 48 Ark. 409.

McCULLOCH, J. This is a suit in equity instituted by J. B. Sturdivant, W. A. J. Sturdivant, J. S. P. Sturdivant, Nancy J. Morphew and Arminnie McCarley, children and heirs at law of J. S. Sturdivant, who died intestate on April 10, 1904, against Katie J. Cook and certain other persons to enforce a lien on lands in which the defendants claim an interest.

The facts set forth in the pleadings and established by the evidence are substantially as follows:.

The lands in controversy were purchased by J. B. and W. A. J. Sturdivant in the year 1891 from one Reed, and were paid for with money borrowed from their father, J. S. Sturdivant. In 1894 J. B. Sturdivant conveyed his undivided half of the lands to his brother, W. A. J. Sturdivant. J. B. Sturdivant was engaged in the mercantile business, became insolvent, and in December, 1894, all his property was taken under attachment and sold in an action brought against him by his father for debt.

In 1896 W. A. J. Sturdivant executed to J. S. Sturdivant a deed conveying said lands. This was in the form of an absolute conveyance, but was intended and agreed to be only a security for a debt of $3,000 owing by W. A. J. to said J. S. Sturdivant, which included the money borrowed for use in paying for the

land when purchased from Reed. The deed was never recorded, and has not been produced in this record, but its execution and contents are proved. W. A. J. Sturdivant remained in possession of the land, and J. S. Sturdivant never at any time obtained possession.

The defendant Katie J. Cook obtained a judgment for debt against J. B. Sturdivant, and on April 15, 1899, caused an undivided half of these lands to be sold as the property of J. B. Sturdivant under execution issued upon her judgment, and bought said interest in the land at the execution sale. Mrs. Cook then brought suit in equity against W. A. J. Sturdivant to cancel the said deed executed to him by J. B. Sturdivant, alleging that the same was executed for the purpose of defrauding the creditors of J. B. Sturdivant. The chancery court in that case rendered a decree, declaring said deed to be fraudulent and void as against creditors, and canceled it, and quieted Mrs. Cook's title to the undivided half of the land purchased at the execution sale. The decree was appealed from, and was affirmed by this court on June 25, 1904. After the affirmance of the decree Mrs. Cook conveyed an undivided fourth of the land to her attorneys, D. B. Sain and W. V. Tompkins, in payment for their services rendered in the litigation. Suit was then brought in the chancery court for partition between W. A. J. Sturdivant and appellees, Cook, Sain and Tompkins, and the lands were sold for partition.

The present suit was instituted on March 28, 1905, to enforce the lien claimed on the land by virtue of the conveyances executed by W. A. J. to J. S. Sturdivant for payment of said debt of $3,000 and interest.

The institution of this suit was the first information Mrs. Cook or her said grantees received of any lien or other claim upon the land by J. S. Sturdivant, or of the execution of said unrecorded conveyance to him by W. A. J. Sturdivant.

The chancellor dismissed the complaint for want of equity, and the plaintiffs appealed to this court.

Mrs. Cook purchased at her own execution sale. The amount of her bid was credited on the judgment, and therefore she was not an innocent purchaser for value, but took the title subject to prior equities of other persons. *Allen* v. *McGaughey*,

31 Ark. 252; *Pickett* v. *Merchants' National Bank,* 32 Ark. 346; *Hill* v. *Coolidge,* 33 Ark. 621; *Williams* v. *McElroy,* 34 Ark. 85.

Are appellants, as heirs of J. S. Sturdivant, barred from asserting a lien on the land?

The deed under which the lien is asserted has never been recorded, and appellees had no notice of it. J. S. Sturdivant testified as a witness in the suit of Mrs. Cook against W. A. J. Sturdivant to cancel the J. B. Sturdivant deed, and failed to disclose his alleged interest in or lien upon the land. A period of nine years elapsed from the date of the deed until the lien was asserted under it, and in the meantime Mrs. Cook purchased at the execution sale, prosecuted her .suit to successful termination against W. A. J. Sturdivant to cancel the fraudulent deed executed by her debtor, J. B. Sturdivant, then conveyed an interest in the land to her attorneys, and caused the land to be sold for partition.

The deed to J. S. Sturdivant, though absolute in form, was intended to be in effect a mortgage, and appellants are seeking to enforce it as such. The defendants plead the statute of limitation against its enforcement, and also plead the staleness of the demand.

We need not determine whether or not the enforcement of this lien is barred by the statute limiting the time within which suits to foreclose mortgages may be instituted. Act March 25, 1889, Kirby's Digest, § § 5399-5400.

Chief Justice ENGLISH, in delivering the opinion of this court in *Wilson* v. *Anthony,* 19 Ark. 16, said:

"But where the statute is not relied on as a defense, or where there is no statute of limitation, a court of equity will not aid in enforcing stale demands, where the party has been guilty of negligence, or has slept upon his rights. The chancellor refuses to interfere after an unreasonable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have been obscured by time and the evidence may be lost."

In *Ringo* v. *Woodruff,* 43 Ark. 469, the court said: "Courts of equity have never favored stale claims and demands, but, on the contrary, from the commencement of their jurisdiction and before the enactment of any positive statute by any legislative

body for the limitation of actions at law, have invariably and decidedly discountenanced laches and neglect.  Until Parliament fixed the time in which action at law should be commenced, they maintained no definite period of limitation, but refused relief to those who slept on their own rights an unreasonable length of time, and in determining what lapse of time was a bar in each case were governed by the peculiar circumstances of each case."

Again in *Gibson* v. *Herriott,* 55 Ark. 85, this court quoted with approval the language of Lord Camden in *Smith* v. *Clay,* 3 Brown, Ch. Rep. 640, note: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time.  Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive and does nothing.  Laches and neglect are always discountenanced, and therefore, from the beginning of jurisdiction, there was always a limitation to suits in this court."

This doctrine has found application in many other decisions of this court upon varying facts.  *Patterson* v. *Fowler,* 23 Ark. 459; *Thomas* v. *Sypert,* 61 Ark. 575; *Buck* v. *Davis,* 64 Ark. 345; *Fitzgerald* v. *Walker,* 55 Ark. 148.

For an application of this doctrine, see *Godden* v. *Kimmel,* 99 U. S. 201; *Abraham* v. *Ordway,* 158 U. S. 416; *Walet* v. *Haskins,* 68 Tex. 418; *Bauseman* v. *Kelley,* 38 Minn. 197; 1 Beach, Mod. Eq. Juris. § 17.

Mr. Justice Harlan, in delivering the opinion of the Supreme Court of the United State in *Abraham* v. *Ordway, supra,* said: "But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and where injustice would be done in the particular case by granting the relief asked."

Now in the case at bar there was an unexplained delay of about nine years in asserting the lien.  Mrs. Cook had the land sold under execution against J. B. Sturdivant, bid it in, and her judgment was satisfied by credit of the amount bid.  She prosecuted, doubtless at great expense and trouble, her suit against

W. A. J. Sturdivant to cancel the deed of J. B. Sturdivant, and finally succeeded in the suit. J. S. Sturdivant knew of this suit and the particular controversy involved therein. He testified as a witness for his son, and said not a word about having a lien on the land. He gave no notice to Mrs. Cook that her effort to recover the land would be a fruitless one, even if she won that suit, because of his superior lien, nor did he record his deed. If he were alive now, asserting a lien, we think a court of equity should turn a deaf ear to his prayer for relief, and his heirs are in no better attitude.

We think, for other reasons, the plaintiffs were properly denied relief.

Appellant J. B. Sturdivant seeks to enforce a lien on lands sold to satisfy a judgment against himself. Certainly a court of equity will not aid him in depriving his judgment creditor of the fruits of a sale made to satisfy the judgment, at least not without requiring him to do equity by paying the judgment.

Nor is W. A. J. Sturdivant in any better attitude to ask equitable relief. The lien which he seeks to enforce is for his own debt to his father, J. S. Sturdivant. He created the lien by executing the deed to his father, has bought the interests of the other heirs, and now attempts to collect the debt which he owes himself out of the lands which have been previously adjudged to Mrs. Cook in the suit which she brought against him to cancel the J. B. Sturdivant deed. Should a court of equity aid him in having his own debt paid out of property owned by another? Certainly not.

Learned counsel argue that the adjudication in the former suit between Mrs. Cook and W. A. J. Sturdivant does not bar the rights of the latter acquired by inheritance from his father and by purchase from the other heirs. Concede that to be true, yet he is attempting to coerce the payment of a debt for which he is primarily liable out of land which, aside from this lien, belongs to Mrs. Cook, and has been adjudged to her. The debt and lien being of his own creation, the effect of his inheritance from his father and purchase from the other heirs was merely to extinguish them. It amounted to a payment of the debt, because he could not be creditor and debtor at the same time.

Taking either view of the case, the chancellor was correct in his decree, and the same is affirmed.