## MATTHEWS *v.* WARNER & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued December 9, 10, 1884.—Decided December 22, 1884.

On the facts in this case it appears that the plaintiff had no real ownership, actual control, or lawful right to the bonds in suit.

The facts which make the case are stated in the opinion of the court.

*Mr. William A. Abbott*, for appellant.

*Mr. E. R. Hoar* and *Mr. J. B. Warner*, for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court for the District of Massachusetts, dismissing the bill of appellant, who was plaintiff below. See 6 Fed. Rep. 461.

The bill alleges that the plaintiff is the owner of one hundred and fifty bonds of $1,000 each of the Memphis and Little Rock Railroad Company, and fifty similar bonds of the South Carolina Central Railroad Company, which have wrongfully come to the possession of defendants; that these bonds are negotiable by delivery, and that defendants are about to sell them at public auction, or otherwise, and she prays an injunction to prevent this sale and for other equitable relief.

Defendants deny any ownership or interest of plaintiff in the bonds, and allege that they are holders of them for a valuable consideration, and set out the transaction by which they obtained the bonds. This answer raises several questions which we do not think necessary to consider, and a large volume of testimony is found in the case which, for the same reason, we do not propose to review here.

The defendants are trustees under an assignment made by Thomas Upham for the benefit of his creditors. There passed to them by the assignment a bond for $250,000, made by Edward Matthews, the husband of plaintiff, and a mortgage on valuable real estate in the city of New York to secure it. These were made payable to Nathan Matthews, brother of Edward, and by him assigned to Upham as security for a loan or loans made by Upham to Nathan Matthews.

It seems to be clear that this assignment was made by the consent of Edward or by his directions. This was in May, 1875. Some time prior to March, 1877, Edward Matthews, who had become embarrassed, desired to take up this mortgage, and entered into negotiations for that purpose with defendants, who agreed to an exchange of the bond and mortgage for the railroad bonds which are the subject of this suit. They accordingly sent Joseph B. Warner, their legal adviser, from Boston, where they resided, with the bond and mortgage, and the exchange was made by him as their agent, receiving the bonds in question at Mr. Matthews' office in the city of New York. This exchange took place on the 6th day of March, 1877. It appears that the 150 Memphis and Little Rock Company bonds were on that day, and had been for some time previous, in possession of Morton, Bliss & Co., bankers, as collateral security for the debt of Edward Matthews, who had placed them there.

From the very vague and unsatisfactory testimony of Mr. Brander Matthews, son of plaintiff, and of her husband, Edward Matthews, it appears that, at some time prior to the date of this transaction, but whether a month or a year he cannot say, Brander Matthews went with his mother to the office of the Safe Deposit Company and secured a box for his

mother's use, of which she took one key and he another. On this 6th day of March, without consulting his mother, he went to this box and took out 200 bonds of the South Carolina Central Railroad Company, and going from thence to the office of Morton, Bliss & Co. he exchanged 150 of these bonds for the Memphis and Little Rock Company's bonds, and brought them with the remaining 50 bonds of the South Carolina Company to his father's office, and in his presence delivered them to Mr. Warner.

An instrument in writing was there drawn up showing the terms of the exchange and the purpose for which the bonds were pledged. This instrument is signed Caleb H. Warner and Charles F. Smith, by Joseph B. Warner, their attorney; Nathan Matthews, by W. H. Williams, his attorney, and by Edward Matthews.

Mr. Brander Matthews testifies that he had no authority from his mother for the use he made of the bonds, nor does he believe she knew anything about it. Mr. Edward Matthews supports him in this. It is, however, apparent, that in regard to these bonds, and to others placed in the box and removed from it from time to time, that the mother was rarely, if ever, consulted. Mr. Edward Matthews testifies that these bonds had at one time been his bonds, and he says they became his wife's property by virtue of assignments which he had made of them to Watson Matthews, his brother, in trust for Mrs. Matthews.

Two papers are produced which purport to assign to Watson Matthews the equity of redemption and right and interest of Edward Matthews to a large list of bonds and other securities held by parties to whom Edward Matthews had pledged them for his own debts. One of them is dated April 22, 1876, and the other May 13, 1876. There is no satisfactory evidence of the delivery of either of these papers to Mrs. Matthews or to Watson Matthews. Edward Matthews says they were placed with other papers in Mrs. Matthews' box in the safe deposit vault. There is no evidence that Mrs. Matthews ever had either of these papers, or any of the bonds described in them, in her manual possession. No evidence that she ever went to the box or opened it herself to put anything in it or take anything

out. The instruments speak of the assignments as security for a debt owing by Edward Matthews to his wife. No evidence is given of the origin of this debt; nor that Mrs. Matthews ever had any separate estate of her own, or anything to loan her husband. They must have been married a long time, as Brander Matthews, the son, was over twenty-three years old at the time of these transactions.

It also appears that Watson Matthews was the brother of Edward Matthews, and both he and Brander Matthews occupied as offices the same rooms in which Edward Matthews did business.

It is significant also that the bill in this case is sworn to by one of the solicitors on his belief, and her name is signed by them and not by herself.

The only act which she is ever said to have done or performed in person, asserting a claim to these bonds, is a notice, to which her name is appended, to the defendants, about a month after the exchange of the bond and mortgage for the railroad bonds, in which she says they are her bonds, and forbids them to sell them. A witness, the clerk of Matthews, says the signature, he thinks, was written by Mr. Matthews. And it is admitted that the letter was dictated by him and written in his office.

The plaintiff, who, if she had any just claim to these bonds, could best have explained how that claim originated, who could have told what money or property she loaned her husband, or how he became her debtor, is not sworn as a witness in the case.

It looks very much to us as if the box at the safe deposit vault, with a key in the possession of the son, who occupied the same office with the father, and in the light of other evidence in the case, was a contrivance by which the husband could use the bonds as his own when he desired, and assert them to be the property of his wife when that was more desirable.

We are of opinion that plaintiff never had any real ownership or actual control or any lawful right to the bonds in suit.

*The decree of the Circuit Court dismissing the bill is affirmed for this reason, without examining other grounds of defence to the suit.*