## MATTHEWS *v.* WARNER *et al.*

*(Circuit Court, D. Massachusetts.* December 14, 1887.)

MORTGAGES—ASSIGNMENT—EFFECT—ESTOPPEL.

The plaintiff gave his brother a mortgage to secure a loan. This brother informed him that he wished to assign the mortgage to a creditor whom he owed: to this plaintiff made no objection. *Held,* that the plaintiff is estopped from denying that the mortgage was held to secure his brother's debts to the creditor.[1]

In Equity. On motion to dismiss.

*John Lowell, John F. Dillon,* and *W. A. Abbott,* for complainant.

*J. B. Warner,* for defendants.

COLT, J. The main issue involved in this case has been before this court, in a suit brought by Virginia B. Matthews, wife of the plaintiff, against these defendants. 6 Fed. Rep. 461, 112 U. S. 600, 5 Sup. Ct. Rep. 312. The bill is brought to recover the proceeds of certain mortgage bonds, which were delivered by the plaintiff to the defendants, Warner and Smith, trustees, in substitution for a certain bond for $250,-000, made by the plaintiff to his brother Nathan Matthews, bearing date May 8, 1875, secured by mortgage on real estate in New York city.

The bond and mortgage were assigned May 13, 1875, by Nathan Matthews to Thomas Upham, who, having become insolvent, transferred them to the defendants, Warner and Smith, in trust for the benefit of his creditors. The contention of the plaintiff is that the bond and mortgage were given by him to his brother Nathan, to secure certain loans Nathan made to him, and that the assignment by Nathan to Upham was intended to secure only the payment of the plaintiff's indebtedness to Upham, and was not intended to secure whatever debts Nathan owed Upham. Upon substantially the same evidence (except that Nathan Matthews was not called as a witness in this case) this court, in the *Case of Virginia B. Matthews,* says:

"It is clear that Upham had let a great deal of money to Nathan Matthews, and that he held valuable securities for its repayment, which he surrendered in exchange for the bond and mortgage of Edward Matthews; and that he had no notice or knowledge of any dealings between the brothers which would injuriously affect his title. Upon the preponderance of evidence, I find that Edward made the mortgage with knowledge that it was to be used to secure whatever debts Nathan owed Upham; or that it was so made and assigned that Upham had, as against Edward, the right to believe so."

The supreme court, in their opinion in that case, placed their decision on the ground that Mrs. Matthews had no real ownership in the bonds. At the same time, the court make use of the following language as to the assignment to Upham: "It seems to be clear that this assign-

[1] The protection of an estoppel extends to any one claiming under the person to whom the declarations or admissions were made. Griffiths v. Sears, (Pa.) 4 Atl. Rep. 493; Wardlaw v. Rayford, (S. C.) 3 S. E. Rep. 71.

ment was made by consent of Edward or by his directions." Upon careful consideration of the evidence, I am of opinion that the conclusion reached by this court in the former suit was correct.

It seems to me that, by a preponderance of evidence, the assignment to Upham was made to secure the debts of Nathan Matthews, or that it was so made and assigned that Upham had, as against Edward, the right to believe so. Edward had at this time full confidence in his brother, and he was also much pressed for money. He appeared to be willing to do whatever Nathan suggested in the belief that, upon an accounting, Nathan would deal fairly by him. The letter of Nathan to Edward, of May 6, 1875, about the assignment of the bond and mortgage, is significant. Nathan there says: "And I want you to write me a letter authorizing me to assign it to Thomas Upham, I, of course, giving you my agreement that I hold it as collateral." Edward in reply said: "You are hereby authorized to assign to Thomas Upham, Esq., the mortgage for two hundred and fifty thousand dollars, which I have given you as collateral security for loans made to me." The plaintiff in this letter annexed no conditions to the proposed assignment. Owing to pressure for money, he was undoubtedly willing to do anything Nathan desired to enable him to get money from Upham, or any one else. Upham released to Nathan valuable securities, and took the $250,000 bond and mortgage. Other documentary evidence indicates the position of the defendants to be correct, and in accordance with the intent of the parties. The agreement of March 6, 1877, under which the bond and mortgage were surrendered, and certain bonds and a note of H. J. Furber substituted, expressly states that on receipt of said assignment, "said bonds shall be immediately held, together with the said note, when it shall be delivered as a substitute for the said mortgage in the hands of the said Warner and Smith, and may be dealt with by them in every way as the mortgage might have been, and shall be collateral security for the claims now held by the said Warner and Smith against Nathan Matthews." The position now taken by the plaintiff, as to the real character of the assignment of the bond and mortgage to Upham, seems to have been an afterthought, and it is inconsistent with the situation and surrounding circumstances of the parties at the time, with the documentary evidence now adduced, and with the course of conduct of the plaintiff for some years after the transaction took place.

Upon the merits of the case, therefore, and without examining the other and more technical grounds of defense raised, I am of opinion that the plaintiff, as against Upham, or his trustees, is estopped from setting up that the bond and mortgage were not assigned as security for the debts of his brother Nathan. The bill should be dismissed. Bill dismissed.