# RITA ECHCANDIA AND HER HUSBAND, BRAULIO CABALLERO, Plffs.,

*v.*

# MUNICIPALITY OF SAN SEBASTIAN, Dft.

San Juan, Equity, No. 978.

IN THE MATTER OF PRELIMINARY INJUNCTION.

Jurisdiction—Citizenship.

    1. A Porto Rican woman who was married to a Spanish subject prior to the American occupation, and whose husband made the necessary declaration to preserve his Spanish citizenship after the Treaty of Paris, in the name of himself and his wife, is a Spanish subject.

Equity—Preliminary Injunction.

    2. A preliminary injunction will not be granted where the right is not clear, and where it would greatly prejudice the public without greatly benefiting the plaintiff; a road open to the public for nine years will not be closed upon preliminary injunction where plaintiff's right is doubtful.

Opinion filed August 9, 1916.

*Mr. F. H. Dexter* for plaintiffs.

*Mr. Miguel Guerra* for defendant.

HAMILTON, Judge, delivered the following opinion:

In this cause complainant alleges that she owns a certain tract of land within the municipal limits of San Sebastian, and that

the said municipality has, against her will and without legal
proceedings and without payment of damages, opened a public
road through the property. She asks that the municipality be
enjoined and the road closed until proper proceedings for con-
demnation and payment therefor.

1. The defendant in the first place denies that the plaintiff
has the requisite citizenship to bring this suit, and sets up that
she is a Porto Rican and therefore cannot sue a Porto Rican
corporation in this court. The question was provisionally de-
cided at the hearing, but has received subsequent consideration.
It hinges upon the status of a woman born in Porto Rico and
married there before the American occupation, to a Spaniard,
native of the peninsula. The general principle of the common
law of marriage is that the wife acquires and follows the status
of the husband. In the case at bar both husband and wife were
Spanish subjects before the American occupation in 1898. The
treaty of Paris in art. 9 permitted Spanish subjects, natives of
the peninsula, residing in Porto Rico, to preserve their alle-
giance to the Crown of Spain by making before a court of record,
within a year from the date of exchange of ratification of the
theaty, declaration of their intention to preserve their alle-
giance, in default of which declaration they shall be held to have
renounced it and to have adopted the nationality of the terri-
tory in which they may reside. 1911 Compilation of Revised
Statutes and Codes of Porto Rico, p. 1031. It is shown that
the husband of plaintiff made due declaration of his intention
to remain Spanish by appearing before a municipal judge of
the proper municipality, and the certificate certified by such
official shows that he made this declaration on behalf of him-
self and his wife. The argument of counsel is that the Treaty

only covered the case of natives of the peninsula, which the wife confessedly was not, and therefore the declaration did not affect her.

The actual procedure under this article of the Treaty was defined by G. O. No. 132 of the Headquarters, Department of Porto Rico, found in Part 4 of the Laws and Orders effective in Porto Rico, published by the Government Printing Office in 1909, p. 2261. This provides: "II. For the purpose of permanent record and the protection of the parties concerned, a document will be prepared in duplicate in each case by the municipal judge setting forth the following facts: (a) The name and surname of the interested party, his or her age, nationality (specifying the province), civil status and profession, trade or occupation; (b) names of wife and children, should there be any, and the names of the applicant's parents; (c) the date in which the declaration is made and signed. This document shall be subscribed by the applicant and witnessed by the signatures of the municipal judge and the secretary of his court."

The actual construction of this clause of the Treaty therefore by the officers in charge of the declaration proceedings was that the husband could act for the wife. No other provision is found in this general order as to a married woman. Moreover, it is inconceivable that the framers of this Treaty intended to divorce husband and wife so far as citizenship was concerned, making the husband of one nationality and the wife of another. This objection to the jurisdiction must therefore be overruled.

2. The plaintiff relies upon § 544 of the Civil Code, which provides: "Continuous and apparent servitudes are acquired, either by virtue of a title or by prescription after twenty years."

Echcandia v. San Sebastian.

Section 1831 of the Civil Code provides: "Ownership and other property rights are acquired by prescription in the manner and under the conditions specified by law." The distinction between acquisitive prescription, which is in point here, and limitation of actions, is given in Gonzalez v. San Juan Light & Transit Co. 17 P. R. R. 124. This being a case of concurrent jurisdiction, a court of equity will consider itself bound by the Statute of Limitations which governs courts of law in such cases. Godden v. Kimmell, 99 U. S. 201, 25 L. ed. 431. She contends that not only had there been no sufficient length of time to give rise to the prescription, but that the acts in question were not of the nature required to give rise to such a right. "Acts merely tolerated and those clandestinely executed, without the knowledge of the possessor of a thing, or with violence, do not affect possession." Civ. Code, § 446. "Acts of a possessory character, performed by virtue of a license, or by mere tolerance on the part of the owner, are of no effect for establishing possession." Civ. Code, § 1843.

On the other hand, the defendant's sworn answer denies the clandestine and permissive nature of the acts in question. The proof on the rule to show cause is not clear on this point. The proof of the plaintiff has not been established by a preponderance of the evidence. Matthews v. Warner, 112 U. S. 600, 28 L. ed. 851, 5 Sup. Ct. Rep. 312. The contention of the defendant is that not only has this road been known since June 30, 1907, as road No. 7, but that it was established with the knowledge and consent of the plaintiff, her father being than a member of the municipal government. The Municipal Law of 1906 governing the case requires that the local government "cause to be recorded as municipal roads in the

Echandia v. San Sebastian.

office of the commissioner of the interior all highways which have become such by usage, dedication, abandonment to the public, or by any other means provided by law." § 65, ¶ 4. Dedication therefore seems to be set up by the defendant over against the prescription claimed by the plaintiff as necessary in the case.

It cannot be said that the evidence is satisfactory either way, and as this is a case which would affect the public by closing up a road which had been in use, whether lawfully or unlawfully, for nine years, and would probably cause serious public inconvenience, the better plan seems to be not to grant a preliminary injunction. 22 Cyc. 784, 785 and 946. Turner v. People's Ferry Co. 22 Blatchf. 272, 21 Fed. 90. Of course this is by no means prejudging the result of a final hearing. At that time it may well be that the proof will be more satisfactory. At present it is merely decided that after waiting nine years the plaintiff will probably be less injured by waiting a few months longer than the public would be by an injunction of closure *pendente lite* before the facts and the law are fully developed.

The rule to show cause is therefore discharged and the case will take its usual course for hearing on the merits. The preliminary injunction is denied.

It is so ordered.