## GODDEN *v.* KIMMELL.

In cases of concurrent jurisdiction, courts of equity consider themselves bound by the statutes of limitation which govern courts of law ; in many other cases they act upon the analogy of the limitations at law; but even where there is no such statute governing the case, a defence founded upon the lapse of time and the staleness of the claim is available in equity where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

The case was argued by *Mr. James M. Johnston* and *Mr. John Scott* for the appellant, and by *Mr. Calderon Carlisle* and *Mr. George F. Appleby* for the appellee.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Statutes of limitation form part of the legislation of every government, and are everywhere regarded as conducive and even necessary to the peace and repose of society. When they are addressed to courts of equity as well as to courts of law, as they seem to be in controversies of concurrent jurisdiction, they are equally obligatory in both forums as a means of promoting uniformity of decision.

Stale claims are never favored in equity, and where gross laches is shown and unexplained acquiescence in the operation of an adverse right, courts of equity frequently treat the lapse of time,

even for a shorter period than the one specified in the Statute of Limitations, as a presumptive bar to the claim. *Stearns* v. *Page*, 7 How. 819 ; *Badger* v. *Badger*, 2 Cliff. 154.

Time, it is said, is no bar to an established trust, which may be true in cases of concealed fraud, provided the injured party is not guilty of undue laches subsequent to its discovery. Circumstances of the kind form an exception to the rule ; but the rule still is, that when a party has been guilty of such laches in prosecuting his equitable remedy as would bar him if his title was solely at law, he will be barred in equity, from a wise consideration of the paramount importance of quieting titles. *Michaud* v. *Girod*, 4 How. 561.

It appears that the complainants are, or claim to be, creditors of Edwin Walker, deceased, and that they instituted the present suit in behalf of themselves and other creditors of the deceased to recover a moiety of certain real and personal property, together with the rents and profits of the same, which, as they allege, belonged to their creditor in his lifetime and at the time of his decease. They allege that their creditor owned and held the property described in the bill of complaint in common with one Abram F. Kimmell, of the city of Washington, since deceased, with whom he was carrying on the livery-stable business, under the firm name of Walker & Kimmell, the said property being used for the purposes of said business ; that the said Walker being largely indebted to the complainants, their testators and intestates, as well as other parties, dissolved partnership with said Kimmel and conveyed all his real and personal estate, after payment of all partnership debts, to one Voltaire Willett, by deed dated Oct. 8, 1857, in trust to pay off the complainants, their testators and intestates, with the proceeds thereof, the remainder to be paid over to the grantor, his heirs and assigns. Possession of the property at the time was in the junior partner ; and the complainants allege that he continued in the possession thereof up to the day of his death, holding the same and applying the proceeds thereof to his own use, without accounting for the rents and profits, either to the grantor, the trustee, or to the creditors, and that since his death the property has been in the possession of his widow and children, who have appropriated the same to their own use, and that

they utterly deny all right of the complainants to any part or interest in the same.

Sufficient appears from the preceding statement to show what the circumstances were on the first day of February, 1871, when the present bill of complaint was filed against the respondents in the subordinate court.   They are Mary A. Kimmell, administratrix of Abram F. Kimmell, deceased, his four children, the heirs of the deceased trustee, and the administrator of the deceased senior partner, who, as alleged, was the debtor of the complainants.

Service was made; and the respondents appeared and filed answers, setting up several defences, the most material of which are contained in the answer of the widow and children of the deceased junior partner.   They deny all the material allegations of the bill of complaint, to the effect following: —

1.  That the complainants or either of them are creditors of the deceased senior partner of the firm, or that the senior partner of the firm was ever the owner of the real estate described in the bill of complaint, or that he ever owned or possessed any personal property, or that the deceased junior partner ever had in his possession any personal property which belonged either to the deceased senior partner or to the firm.

2.  They admit the death of the trustee, but they aver that they are not informed and cannot state whether he ever did any thing in discharge of the trusts created by the said deed, and they also admit that the trustee and the deceased junior partner made the alleged conveyance to the brother-in-law of the latter, but they aver that it was made in good faith, and that the moiety of the consideration belonging to the senior partner was appropriated to pay his just debt, as fully explained in the answer.

3.  They also allege as a defence that the debtor of the complainants left Washington in the year 1846; that he went to Richmond and entered into business there with a new partner; that he there contracted large debts for which he was liable; that in the latter part of 1857 he conveyed to his new partner a large amount of real and personal property to pay all his debts, including those set up by the complainants; that all these claims were fully satisfied and extinguished either by payment

in money or by the acceptance of other securities; and that the supposed debtor of the complainants, at the time of the dissolution of the partnership here, before he went to Richmond, relinquished all interest in the future earnings of the concern, and that the partnership as between the parties was dissolved, though they admit that no formal notice of the dissolution was published.

4. They also admit that besides the real estate there was at the time on hand a large stock of horses, vehicles, and other property, all of which was taken by the junior partner; but they aver that the junior partner from time to time made payments and advances to the retired partner exceeding in amount the value of his interest in the assets of the partnership, as estimated by himself; and they aver that no formal settlement of accounts ever took place, but they allege that if one could be made, which, as they state, it would be difficult and expensive to accomplish, it would be found that the estate of the debtor of the complainants is largely indebted to the estate of the junior partner.

Finally, they set up as defence to the suit that the claims are stale demands, and of a character that courts of equity will not countenance, because, as they allege, it would now be inequitable and unjust that the complainants should be permitted to enforce an account from the respondents, after having slept upon their rights, if any they have, for so long a time and until all the parties to the transaction are dead.

By consent the cause was referred to an auditor, with instructions to ascertain and report what amount, if any, was due to the respective complainants, and to ascertain and state the partnership accounts and the character of the partnership property at the date of the trust-deed, and the disposition made of the rents and profits by the respondents. Hearing was had before the auditor, and he made the report set forth in the transcript.

Testimony was taken by the complainants prior to the order of reference, and they took further testimony before the examiner subsequent to the appointment of the auditor. By his report it appears that two schedules were attached to the deed of trust, one of which purported to be a list of drafts, notes, and

bonds due to a third person, and the other to be a list of debts due by the debtor to the complainants. Among other things, the deed recited that the said debtor, independently of his indebtedness to the firm of which he was a member, owed a large amount to the persons named in the two schedules, and that he desired, after paying all the firm · debts, to secure *pro rata* the debts in the first schedule, and if sufficient was left after that, to pay in full the debts in the second schedule.

It appears that the deed was duly executed, and that the grantor conveyed to the trustee, his heirs, executors, administrators, and assigns for ever, all of his right, title, and interest in and to the real and personal property, debts, effects, credits, and assets of every kind whatever and in any manner belonging to the firm, subject to the debts and liabilities of the firm and to the right of the junior partner in winding up and paying off the same, the true intent and meaning of the instrument being only to convey the interest of the senior partner after all the liabilities of the firm have been discharged. Matters of the kind being fully explained, the auditor proceeds to report that he has not stated the claims of the respective complainants ; and he gives the reasons for the omission, which appear to be satisfactory, as the report shows that the complainants did not furnish the means to enable him to comply with that direction, except perhaps in the single instance fully set forth in the report.

Directions were also given by the decretal order that the auditor should state the partnership accounts, which he also failed to do, for the satisfactory reason, as he states, that no testimony or other material was furnished by the parties to enable him to perform the required service. Another direction of the decretal order was to state the amount of the property belonging to the firm at the date of the trust-deed. For a compliance with that order, so far as the real estate is concerned, the auditor refers to the deeds introduced in evidence before the examiner, and in respect to the personal property he states that there was no evidence given to show what, if any, belonged to the partnership at that date.

Lots numbered 16, 17, and the west half of 18, in the square numbered 491, were included in the trust-deed. On the 16th

of November, 1858, the junior partner and his wife, the trustee of the senior partner joining with them, conveyed the west half of lot 18 and part of lot 17 to the trustee of the sister-in-law of the first-named grantor, in respect to which the auditor reports that the deed conveying the same refers to the prior deed of trust given by the senior partner, and he states that the recitals of the deed specify the purpose for which it was executed, and show that the firm owed the *cestui que trust* the sum of $2,000 money loaned, and that the property was conveyed to her for the sum of $5,000, one-half of which went to pay that debt and interest, and the other moiety was paid or secured to the junior partner of the firm.

Six years later the grantee in the deed reconveyed the same to her brother-in-law for five dollars, as expressed in the consideration of the deed. Complainants charge in the bill of complaint that the junior partner fraudulently procured the conveyance to be made in order to secure the title to himself; but the respondents in their answer deny all fraud and bad faith in the premises, and the auditor reports that no testimony was given touching the conveyance. Instead of that, he states, in response to that charge, that while the circumstances attending the conveyance may be well calculated to cast suspicion upon it, he finds nothing in the case to warrant him in pronouncing it fraudulent and void.

Where the answer of the respondent is responsive to the bill it is evidence in his favor, and is conclusive, unless disproved by more than one witness. Story, Eq. Plead. (7th ed.), sect. 875 *a*; *Daniel* v. *Mitchel*, 1 Story, 188.

Two witnesses, or one witness with confirmatory circumstances, are required to outweigh an answer asserting a fact responsive to the bill, the reason for the rule being that when the complainant calls upon the respondent to answer an allegation he admits the answer, if duly filed, to be evidence, and if it is testimony, it is equal to the testimony of any other witness; and as the complainant cannot prevail unless the balance of proof is in his favor, he must have circumstances in addition to his single witness, else he fails to establish the affirmative of the issue. *Clark's Executors* v. *Van Reimsdyk*, 9 Cranch, 153; *Hughes* v. *Blake*, 6 Wheat. 453.

Chancery courts invariably hold, where the answer is responsive to the bill and positively denies the matters charged, and the denial has respect to a transaction within the knowledge of the respondent, the answer is evidence in his favor; and unless it is overcome by the testimony of two credible witnesses, or of one witness corroborated by other facts and circumstances which give it greater weight than the answer, it is conclusive, so that the court will neither make a decree nor send the case to trial, but will simply dismiss the bill. *Badger* v. *Badger, supra.*

Only one witness was examined before the auditor as to the rents and profits received by the respondents, and the report of the auditor states that the annual rental value of the property, excluding that charged to have been fraudulently conveyed, was only $938, and if that be excluded, then the real estate consists only of lot 16 in square 491, with the improvements.

Ten exceptions to the auditor's report were filed by the complainants, alleging for error that he did not report their respective claims as liens against the property in controversy. Pursuant to the order of the court the parties were heard upon the auditor's report and the exceptions thereto, and the court entered a decree that the bill of complaint be dismissed, from which decree the complainants appealed to the general term, where the decree of the subordinate court was affirmed.

Proceedings in the court below being ended, the complainants appealed to this court, and filed the following assignment of errors: 1. That the court erred in not entering a decree cancelling and setting aside as fraudulent the said conveyance to the sister-in-law of the junior partner. 2. That the court erred in not entering a decree that the real estate transferred to the trustee of their debtor should be sold and distributed to his creditors. 3. That the court erred in not entering a decree that the administratrix of the junior partner should account and pay to the trustee to be duly appointed so much of the personal assets of the firm included in the trust-deed as were held by her intestate in his lifetime. 4. That the court erred in dismissing the bill of complaint. 5. That the court erred in not entering a decree that the representa-

tives of the deceased junior partner should account for the rents and profits of the real estate conveyed to the trustee up to the date of the decree in this cause.

That the partnership existed is not denied; and the proof is clear that the senior partner left Washington in 1846, and that he went to Richmond and there formed a new partnership, and engaged largely in business for twenty years before his death. As before remarked, the right of the complainants, if any, to prosecute the suit sprang from the trust-deed dated Oct. 8, 1857, and executed by their alleged debtor to his trustee for the purpose of paying his debts, including what he owed to the complainants. Annexed as the deed is to the bill of complaint, it may properly be referred to as an exhibit, from which it appears that their debtor and the intestate of the first-named respondent were "engaged as partners in the city of Washington, and in the progress of the business acquired real and personal estate, including horses, carriages, buggies, sulkies, and other property," and that they held claims against various persons, and that the senior partner was independently indebted to the persons named in the schedules appended to the deed; that he conveyed all his right, title, and interest in the real and personal property, debts, effects, credits, and assets of the firm to the grantee of the trust-deed for the described purposes, subject to the debts and liabilities of the firm, and the right of the junior partner in winding up and paying off the same.

There is no averment in the bill that any interest in the partnership property was ever collected by the trustee, or that he could have made any such collection, nor is it averred that any of the complainants are judgment creditors.

Fourteen years elapsed from the date of the deed to the filing of the bill, and throughout that period none of the complainants during the lifetime of the partners and trustee or any of them, took any step whatever to ascertain or enforce their rights, if any they had, under that trust-deed. Nothing appears to show that the trustee ever took any beneficial title whatever to the real property. Beyond doubt, he took the legal title by the words of the deed; but there is no proof to show that he ever acquired the possession or the right of

possession, it appearing by the deed that the right of possession was secured to the junior partner, for the purpose of winding up the partnership.

Concede that the grantor might have joined the trustee in a suit for an account on his own motion or at the suggestion of the trustee or creditors, still the answer to that suggestion, if made, is that he did not do so; and now the grantee, the trustee, and the junior partner all being dead, unless there can first be an account of the partnership property, the complainants can obtain no relief, as there is nothing on which a decree in their favor could operate for their benefit. They do not allege that there was ever any settlement of the partnership affairs, nor do they in terms pray in the bill for an account of the partnership assets. By consent an auditor was appointed to ascertain and state the partnership accounts, but he characterizes the proceedings in the cause as involved in obscurity, and the testimony "as incomplete, vague, and indefinite," and reports that there is only one instance in which the amount due to any one of the complainants has been proven with any reasonable degree of certainty. Except the prayer that the administratrix and heirs of the junior partner account with and pay over to the complainants the rents and profits of the estate conveyed to the trustee, the bill of complaint contains nothing which can possibly be construed as a prayer for an account of the assets of the partnership.

Four lots, to wit, 16, 17, 18, and 19, the complainants claim were held and used as partnership property; but the answer of the principal respondents denies that claim, and avers that the firm never owned any of the real estate mentioned, except lot 16 and parts of lots 17 and 18; and the auditor reports that, excluding the property conveyed to the other trustee, the assets consist only of lot 16 with the improvements on the same, and that there is not a particle of testimony to prove that the conveyance to the other trustee was fraudulent. Attempt is made to set aside that conveyance without making either the trustee or *cestui que trust* parties to the bill, though it is said by the complainants that they are both alive, of which, however, there is no proof in the record.

Exceptions to the auditor's report were taken by the com-

plainants because he did not report as liens against the property described in the cause the claims of each and every complainant, when his report shows that the evidence given did not enable him, except in one instance, to ascertain the amount of the claims, which was much less than the minimum of jurisdiction.

For fourteen years the complainants slept upon their rights, and there is not a single allegation in the bill nor a particle of proof introduced in their behalf to excuse their manifest laches in not seeking an account until all the parties in interest have departed this life.

Equity courts in cases of concurrent jurisdiction usually consider themselves bound by the Statute of Limitations which govern courts of law in like cases, and this rather in obedience to the Statute of Limitations than by analogy. *Wagner* v. *Baird*, 7 How. 234. In many other cases they act upon the analogy of the statutory limitations at law, as where a legal title would in ejectment be barred by twenty years' adverse possession courts of equity will act upon the like limitation, and apply it to all cases of relief sought upon equitable titles or claims touching real estate. *Moore* v. *Greene*, 2 Curt. C. C. 202; 2 Story, Eq. Jur. (8th ed.) 520; *Farnum* v. *Brooke*, 9 Pick. (Mass.) 243.

Support to those propositions is found everywhere; but there is a defence peculiar to courts of equity founded on lapse of time and the staleness of the claim where no Statute of Limitations governs the case. Such courts in such cases often act upon their own inherent doctrine of discouraging for the peace of society antiquated demands by refusing to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. *Badger* v. *Badger*, *supra*; *Roberts* v. *Tunstall*, 4 Hare, 269; *Stearns* v. *Page*, *supra*.

Authorities to support that proposition are numerous and decisive, nor is it necessary to look beyond the decisions of this court for the purpose. Lapse of time, said Mr. Justice Thompson, and the death of the parties to the deed have always been considered in a court of chancery entitled to great weight and almost controlling circumstances in cases where the controversy grows out of stale transactions. *Jenkins* v. *Pye*, 12 Pet. 241;

*Beckford* v. *Wade*, 17 Ves. 96 ; *Humbert* v. *Rector*, 7 Paige (N. Y.), 193.

Few cases can be found more nearly analogous to the case before the court than the one in which the controversy had its origin in this district.   It had respect to a deed of trust executed to secure certain creditors named in the schedule annexed to the deed.   Enough appears to show that the deed was filed by the trustee himself within twenty years, and that the subordinate court decreed that the amount of debts enumerated in the schedule should be paid.   Appeal from that decree was taken to this court, and Mr. Chief Justice Taney, in disposing of the case and reversing the decree, remarked as follows : " We do not found our judgment upon the presumption of payment.   For it is not merely on the presumption of payment, or in analogy to the Statute of Limitations, that a court of chancery refuses to lend its aid to stale demands.   There must be conscience, good faith, and reasonable diligence to call into action the powers of the court.   In matters of account, where they are not barred by the Statute of Limitations, courts of equity refuse to interfere after considerable lapse of time, from considerations of public policy and from the difficulty of doing entire justice when the original transactions have become obscured by time and the evidence may be lost."   *McKnight* v. *Taylor*, 1 How. 168.

Corresponding views were expressed by Mr. Justice Story prior to that time, and the Chief Justice referred to the same as having settled the doctrine of the court upon the subject. *Piatt* v. *Vattier*, 9 Pet. 416 ; *Smith* v. *Clay*, Amb. 645.

Courts of equity, acting on their own inherent doctrine of discouraging for the peace of society antiquated demands, refuse to interfere in attempts to establish a stale trust, except where the trust is clearly established, or where the facts have been fraudulently and successfully concealed by the trustee from the knowledge of the *cestui-que trust*.   Relief in such cases may be sought; but the rule is that the *cestui que trust* should set forth in the bill specifically what were the impediments to an earlier prosecution of the claim, and how he or she came to be so long ignorant of their alleged rights, and the means used by the respondent to keep him or her in ignorance, and how he or she

first came to the knowledge of their rights. *Badger* v. *Badger*, 2 Wall. 87; *White* v. *Parnther*, 1 Knapp, C. C. 227.

When a party appeals to the conscience of the Chancellor in support of a claim, says Mr. Justice Field, where there has been laches in prosecuting it or long acquiescence in the assertion of adverse right, he should set forth in his bill specifically what were the impediments to an earlier prosecution of the claim; and if he does not, the Chancellor may justly refuse to consider his case on his own showing, without inquiring whether there is a demurrer or any formal plea of the Statute of Limitations contained in the answer. *Marsh* v. *Whitmore*, 21 Wall. 185.

Laches and neglect, says Mr. Justice Swayne, are invariably discountenanced in equity, and therefore there has always been a limitation of suits in such courts from the beginning of their jurisdiction. Limitations of the kind are dictated by experience and are founded on a salutary policy, as the lapse of time carries with it the memory and life of witnesses, the muniments of evidence, and the other means of judicial proof. *Brown* v. *County of Buena Vista*, 95 U. S. 161.

Difficulties often arise in controversies of the kind in getting at the truth so as to administer justice with any thing like reasonable certainty. That the parties to the original transaction have long since deceased is shown from the proofs in the case, and it is not improbable that many or all of their clerks and agents may be inaccessible as witnesses, for the same or some other reason, or if alive and their attendance as witnesses may be secured, they may not be able to remember any thing about the transactions.

Viewed in the light of these authorities and suggestions, the court is of the opinion that the last defence set up in the respondents' answer is fully maintained, and that there is no error in the record.

*Decree affirmed.*