BARDEN *v.* CITY OF DULUTH and others.

(*Circuit Court, D. Minnesota.* 1886.)

1. MUNICIPAL CORPORATIONS—ACTION TO ENFORCE SPECIAL ASSESSMENTS—STATUTE OF LIMITATIONS.
   Where a municipal corporation is authorized by its charter to improve streets, and to assess the cost thereof against adjacent lots, and to issue certificates showing the amount assessed against each lot; and where, by the terms of the charter, these certificates, unless paid within 30 days, are made collectible by a foreclosure action,—the statute of limitations begins running against each certificate at the expiration of said 30 days.[1]

2. SAME—SUSPENSION.
   Under such circumstances, the running of the statute is not suspended by subsequent legislation changing the boundaries and powers of the municipality.

In Equity.

Bill in equity by the purchaser of certificates issued in April, 1871, by the defendant municipality, for assessments it had made against, and improvements it had made upon, city lots, the present occupants of which were made co-defendants with the city. The special relief sought was payment by the city of these several amounts, or, in default thereof, a decree of foreclosure, and a judicial sale of said lots. Defendants set up the statute of limitations as a special plea in bar.

*Brisbin & Farwell*, for complainant.

*Ensign & Cash* and *W. W. Billson*, for defendants.

BREWER, J. The facts in this case are as follows: In 1870 the city of Duluth was an incorporated city. Under its charter it had authority to grade and improve streets, and cast the expense thereof upon the adjoining lots. It did, during that year, grade and improve Superior street, and, upon completion of the work, street commissioners' certificates were issued against each lot. These certificates were assignable. It is conceded that the work was fully and properly done, and the assessments legally made. These street commissioners' certificates were dated and issued April 18, 1871. The individual defendants are owners of lots on Superior street against which some of these street commissioners' certificates were issued. The charter of the city provided that, in case these certificates were not paid within 30 days, an action to foreclose the lien might be prosecuted in the name of the city of Duluth, in the same manner that real-estate mortgages were foreclosed. In February, 1877, the legislature of Minnesota passed an act to create the village of Duluth out of a part of the territory of the city of Duluth. Practically this ended the city of Duluth. The village organization took its place as to all

---

[1] Respecting the statute of limitations, and when it begins to run, see King Iron Bridge & Manuf'g Co. v. County of Otoe, 27 Fed. Rep. 800, and note, 801–807.

the territory within the limits of the new organization. Neither the city nor the village of Duluth ever took any steps to foreclose these commissioners' certificates. On March 7, 1884, complainant purchased from the contractors the certificates in controversy, and on April 28, 1884, filed this bill; making the city and village of Duluth, as well as the lot-owners, parties defendant, and praying that the city and village be ordered to proceed with the collection, and also praying directly a foreclosure as against the lots.

The principal defense is the statute of limitations. Nearly 13 years passed after the right of action accrued before any efforts were made to collect these certificates,—indeed, before the complainant acquired any interest in them. The bill alleges frequent demands on the municipal authorities for action, and refusals to act; but the answers deny this, and no proof is offered. The case, therefore, stands with the legislation of 1877 as the single excuse for delay. If this is to be considered a proceeding to enforce a statutory liability, six years creates a bar; if to foreclose a mortgage, ten years. If a legal right of similar nature was sought to be enforced in an action at law, the bar of the statute would be inexorable and unquestioned; and equity follows the law, not blindly, perhaps, or ignoring excuses for delay, such as fraud, concealment, or other matters appealing to the conscience of the chancellor. As the supreme court says in *Godden* v. *Kimmell*, 99 U. S. 201, after noticing an exception:

"But the rule still is that when a party has been guilty of such laches in prosecuting his equitable remedy as would bar him if his title was solely at law, he will be barred in equity, from a wise consideration of the paramount importance of quieting titles."

See, also, *Sullivan* v. *Portland & K. R. Co.*, 94 U. S. 806, in which this language is used: "Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence." Wood, Lim. 108, 112, and cases in note; Ang. Lim. § 25, and following.

Now, as I said, the only excuse shown for delay is the legislation of 1877,—legislation nearly six years after the accruing of the right of action. Whatever effect such legislation may have had upon the municipal existence of the city of Duluth, it in no manner disabled this court, or any other court of equitable powers. The same relief which is sought by this bill could have been obtained at any time during these many years. There never has been a day since the right of action accrued in 1871 that the owner of these certificates could not find an open court, and have enforced his rights.

Many considerations exist why the ordinary bar of the statute should not in this case be relaxed. Most of the individual defendants acquired their interests in the lots long after these certificates were issued, and in actual ignorance of their existence. Such liabilities are not voluntary assumed obligations of the lot-owners, but are cast *in invitum* upon them. They are given by statute large interest, with a view of compelling speedy payment, and their actual pay-

ment at an early day is to be presumed. Purchasers of real estate do not expect, after their purchase, to be confronted with the resurrection from the distant past of a tax claim. The common idea respecting taxes, general or special, is their speedy extinction by payment, or translation by legal proceedings into tax titles. The complainant does not come before the court as one who has been long endeavoring to collect a just debt, or even as one who has waited for years in over-generous reliance upon the willingness of owners of lots to repay him the money he has expended in improving their property. He has simply purchased a *cadaver,* and is seeking, by the mystic powers of a court of·equity, to galvanize it into life. The claim is stale.

Judgment will be entered in favor of the defendants.