## KENNEY *et al. v.* CONTNER *et al.*

(*Circuit Court, W. D. Pennsylvania.* September 29, 1890.)

**1. EQUITY—LACHES—ACTION TO CANCEL DEED.**

The heirs of the grantor filed a bill against the widow, children, and executor of the grantee, to set aside a deed of land on the alleged ground that it had been obtained without consideration from the grantor, an aged and feeble woman, when mentally incompetent, by an abuse of a fiduciary relation existing between her and the grantee, and also by an actual fraud practiced by the grantee and one of the subscribing witnesses. The grantor died a few weeks after the date of the deed, and it was then immediately recorded, and the plaintiffs had actual knowledge of its contents. Fifteen years had elapsed before the bill was filed, and in the mean time the subscribing witness whose integrity was assailed and the grantee, both of whom survived the grantor a number of years, had died. *Held,* that the plaintiffs' laches and these deaths were, of themselves, sufficient to preclude equitable relief.

**2. SAME—UNDUE INFLUENCE.**

The case, however, considered on its merits, and the conclusion reached that the deed was executed when the grantor was in possession of her sound mental faculties, and was her free, voluntary, and deliberate act, procured by no improper influence, and untainted by any actual or constructive fraud.

In Equity.

*O. W. Aldrich, Rufus C. Elder,* and *Andrew Reed,* for plaintiffs.

*D. W. Woods* and *James C. Doty,* for defendants.

ACHESON, J. The plaintiffs are the heirs at law of Elizabeth Kenney, late of Menno township, Mifflin county, Pa., who died May 25, 1874, aged 82 years. James Kenney, one of the plaintiffs, is the son, and the other two plaintiffs are grandchildren, of John Kenney, a brother of Elizabeth. The defendants are the widow and children and the executor of Davis McKean Contner, who died on or about January 1, 1889. The bill of complaint was filed May 6, 1889. The purpose of the suit is to set aside an article of agreement or lease between Elizabeth Kenney and Davis McKean Contner, and a deed of conveyance from her to him. The article of agreement bears date November 8, 1870, and it was duly acknowledged before Samuel B. Wills, a justice of the peace of Mifflin county, but was not recorded. Dr. T. A. Worrall and Wills are subscribing witnesses to the agreement. After reciting that "whereas, the said Elizabeth Kenney has been for a long time living with and kindly cared for by the said Contner, and whereas, she is desirous to reward him for his care and kindness, as well as to improve her farm,"—a tract of about 130 acres of land in Menno township,—the agreement provides that Contner shall find the materials for and erect on the farm a good two-story house and other buildings, at a cost not to exceed $6,500; the account of the cost to be kept by him and verified by his affidavit, which shall be sufficient evidence of correctness; and, further, that he

shall support, maintain, provide for, and take care of, the said Elizabeth during her life-time, and that, in consideration of these things, Contner and his heirs shall have the possession of the land at the annual rent of $150, to be applied to the payment or liquidation of the cost of the improvements, without interest. The deed conveyed the farm to Contner, and virtually superseded the lease, as it passed the whole title. It bears date April 23, 1874, and is for the recited consideration of $500 paid by Contner, as well as his "care and services in taking care of" the said Elizabeth "for many years." Dr. T. A. Worrall and Dr. T. S. Pyle are subscribing witnesses to the deed, and at the end thereof is the official certificate of Samuel B. Wills, justice of the peace, that on the 23d day of April, 1874, the grantor, Elizabeth Kenney, before him personally acknowledged the same to be her act and deed. The deed was recorded in Mifflin county on June 1, 1874.

The bill charges that at the date of the lease or article of agreement Davis McKean Contner was, and for many years had been, the agent of Elizabeth Kenney, having the entire management of her business; that she was then 78 years of age, and in feeble health, and that Contner, taking advantage of her feeble condition and of her confidence in him as her agent, induced her to execute the agreement, the terms of which were unfair and inequitable to her; that the agreement was not read to her before or at the time she signed it; and that T. A. Worrall was not then present, but his name had been placed to the agreement as a witness before the said Elizabeth signed it; that Contner failed to comply with the terms of the agreement in that he did not commence the buildings until the next year after the time fixed, and had not built the house at the time of the death of said Elizabeth; and that the plaintiffs had no knowledge of the agreement until December, 1888. In impeachment of the deed, the bill alleges that, at the date thereof, and for some time before, Elizabeth Kenney was confined to her bed with the disease of which she died shortly thereafter, and was in a feeble condition of mind and body, and entirely unfit to transact any business, or comprehend the effect of her actions; that the relationship between her and Contner was of such a fiduciary character that she was in the habit of trusting him with the management of all her affairs, and that, in fraud of her heirs, Contner obtained the deed from her by taking advantage of her confidence in him, upon a grossly inadequate consideration, and that the pretended money consideration of $500 was never paid in fact; and the bill charges, further, that the deed was not executed when Elizabeth Kenney was in a conscious condition, but that, by the procurement of Contner, her name was written thereto by T. A. Worrall, one of the subscribing witnesses, when she was in a stupor and was unconscious, and that the other subscribing witness was induced to attest the deed by the assurance that Elizabeth Kenney had no heirs. In explanation of the delay in instituting proceedings to set aside the deed, the bill states that soon after the death of Elizabeth Kenney the plaintiffs "caused inquiries to be made in regard to the transfer of said land, and were not able to get any information to lead them to suspect that the deed was not properly ex-

ecuted, or that the said Elizabeth was not competent to make the same," and it was not until some time in the autumn of the year 1888 that they received any such information. That information, it seems proper in this connection to state, came to one of the plaintiffs in a letter from Dr. T. S. Pyle, one of the subscribing witnesses to the deed, and now the chief witness in behalf of the plaintiffs to impugn the deed. It ought also to be here stated that Dr. T. A. Worrall, the other subscribing witness, and whose good faith in the matter is now questioned, died in the month of October, 1877. All the allegations of fact contained in the bill of complaint upon which the plaintiffs' right to relief depends are denied by the answers, but the bill waived answers under oath.

As preliminary to the consideration of the particular transactions here involved, certain facts disclosed by the proofs, connected with the family history of the Kenneys, should be stated. The land in dispute originally belonged to Elizabeth Kenney's father, Matthew Kenney, who devised it to his son James, as his share of the paternal estate. In the year 1829 James, out of natural love and affection, gave and conveyed the land to his sisters, Martha and Elizabeth, and to the survivor of them. Martha died in the year 1838, and Elizabeth was then the last survivor of her race in Pennsylvania. None of her deceased brothers or sisters had left issue. She herself never married. As early as the year 1819, John Kenney had removed from Pennsylvania to the state of Ohio, where he settled, and continued to reside until his death, which occurred on February 7, 1873. Between him and his sister Elizabeth there was very little intercourse. James Kenney testifies to a visit of short duration made by his father and himself to Elizabeth Kenney at her home in Mifflin county about the year 1832. Speaking of that visit James says: "They, Aunt Elizabeth and my father, were on good terms enough, but she was a little envious, thinking he had come to disposses her." In explanation, James further states that to his father's inquiry as to her health she responded that "she was none the better of seeing him;" adding: "I suppose you have come to take possession of the place." "He then told her," James says, that "he never should disturb her in her life-time; * * * and they were reconciled friends and jolly after that." Not long after the death of Martha Kenney, John Kenney revisited his sister Elizabeth. On that occasion, as appears from her statements to several of the witnesses, he gave her great offense in some way, and she never got over her feelings of resentment. Five witnesses testify to her declarations made at various times that John Kenney should never have any of her property.

Turning now to the matter of the alleged fiduciary relationship between Elizabeth Kenney and Davis McKean Contner, it must, I think, be said that the proofs do not sustain the averments of the bill in that particular. It is not satisfactorily shown that Contner was ever the general agent of Miss Kenney, or charged with the entire management of her business. She seems to have been an intelligent, shrewd, and capable woman, and she gave active personal attention to her business affairs down to a late period in her life; although, no doubt, in those mat-

ters she had Mr. Contner's assistance and services. The true nature of the relation between the two may be deduced from the following facts shown by the evidence: When a boy, Contner came to live with and work for Miss Kenney. Two of the witnesses speak of her having raised him, and, with the exception of two terms he served as sheriff of Mifflin county, he spent his whole life-time from boyhood on Miss Kenney's place, and much of the time lived in the same house with her. At the time of the execution of the article of agreement of November 8, 1870, Miss Kenney lived in the family of Mr. Contner, on the farm, and she continued to live in his family until her death. At different times between the years 1862 and 1874, and to several different persons, Elizabeth Kenney stated that she intended to give her property to Mr. Contner. That she was in a perfectly sound mental condition when she made these declarations, there is no reason to doubt.

The only evidence in the case bearing directly upon the execution of the article of agreement is the testimony of Samuel B. Wills, the justice of the peace, who states that he signed it as a witness, and took the acknowledgment of the parties at the home of Elizabeth Kenney on the evening of November 8, 1870; that he went in consequence of a message from Mr. Contner; that all the signatures except his own were already to the agreement; that Miss Kenney said she knew the contents when he asked her; that he proposed to read the paper, but she said it was not necessary, as she knew what it meant; that Mr. Contner and his family were present; that Miss Kenney seemed to be in good health for a person of her age, and he thought her mind was all right,—"as well as a person's could be."

As already intimated, by far the most important witness in the whole case on the part of the plaintiffs is Dr. T. S. Pyle. He attended Elizabeth Kenney in her last sickness; his visits beginning about April 1, 1874, and ceasing about the 29th of that month. He testifies that during all that time he would not consider her competent to transact any business. Dr. Worrall was called in to give his opinion, and a consultation took place on April 22d. The next morning Dr. Pyle and Dr. Worrall met in the sick-room, and the substance of Dr. Pyle's testimony as to what then occurred is this: He states that he found Miss Kenney in a much lower condition than she yet had been, and when he spoke to and touched her she neither answered nor moved, and she seemed to be in a comatose state; that Dr. Worrall and he raised the old lady up in bed, and propped her up, but she made no effort to hold her head or steady herself at all; that he kept her in a sitting position while Dr. Worrall got from the table a paper which he brought to the bed, saying, "Aunt Betsey, we want you to sign this, making the sheriff your son;" that Dr. Worrall took in his own hand a pen and the old lady's fingers and wrote, or pretended to write, and then took the paper to the table and wrote some; that Dr. Worrall told him to put his name to the paper, which he then saw was a deed, and he (Pyle) signed it as a witness; that Contner was present while all this happened; that on that occasion nothing was said about there being no heirs, but Contner had once so told him; that

when Dr. Worrall and Contner left that morning they told him to remain until the justice came, and he did so; that he handed the paper to the justice, Esquire Wills, when he came, and the justice sat down at the table and wrote something, and then got up and left the house; that the justice said nothing at all to Miss Kenney, and no words passed between them. Dr. Pyle further says that about a year and a half before he gave this testimony, which was in August, 1889, one Robert Campbell told him Elizabeth Kenney had relations, and afterwards he wrote to James Kenney.

This certainly is extraordinary testimony. It implicates Mr. Contner and Dr. Worrall, both in their graves when the witness spoke, in an atrocious fraud upon a helpless and unconscious woman, the patient of Dr. Pyle, perpetrated in his presence, and with his acquiescence, at least, and puts him in the attitude of having given, by his attesting signature, authenticity to a deed which he knew was little less than a downright forgery. Furthermore, it imputes to the justice of the peace gross official misconduct, for it represents him as making an untrue and fraudulent certificate; and this guilty secret Dr. Pyle kept locked up in his own breast for a period of 14 years, when he voluntarily divulged it. The testimony of Samuel B. Wills in respect to the acknowledgment of the deed flatly contradicts Dr. Pyle, and is wholly irreconcilable with his account of the matter. Mr. Wills testifies that when he took Miss Kenney's acknowledgment no one was present in the room, nor while he was with her; that "her body was weak, but her mind was clear;" that the paper was on a table near the bed on which she was lying, and she directed him to it; that he asked her if he should read it to her, and she replied it was not necessary, and said: "I know what it means. This is a deed I am making of this property to D. M. Contner. I want him to have it;" that he then asked her if she acknowledged it to be her act and deed, and she said she did. The testimony of Mr. Wills appears to be that of a disinterested and impartial witness, and, aside from Dr. Pyle's implied aspersion of him, his integrity is unquestioned. The discrepancy between him and the witnesses Richard and Gilbert Brindle, as to which of them carried the message which summoned him to Miss Kenney's house in November, 1870, and the precise terms of that message, involves merely a matter of recollection as to collateral circumstances, in themselves of no great moment. Nor do I find anything in what Mr. Cline and Mr. Aldrich recount as said by Mr. Wills in the interviews of which they speak, which in fairness ought to impair the force of his testimony. In this connection, the testimony of Miss Mary A. Bailey, a visiting acquaintance of Elizabeth Kenney, is worthy of special mention. She was a member of Dr. Worrall's family, and went with him to see Miss Kenney about 10 days before she died. She says that on that occasion she was alone with Miss Kenney, and in conversation with her, for about half an hour, and that her mind was clear and strong. Miss Bailey states:

"She was glad to see me, and reprimanded me for not coming oftener. She told me she was feeling more comfortable now; that she was satisfied; that

she had gotten things fixed now as she had wanted them; and that she wanted to give Kean and the children the farm, and she had made Kean a deed of the farm, and that now she was satisfied; that she had got things fixed as she wanted them."

Miss Bailey says she knew nothing about a deed before Miss Kenney told her of it. Miss Bailey is an unimpeached witness, and I am unable to discover any reason for doubting either her truthfulness or the accuracy of her recollection.

There is other important testimony in the case bearing upon the deed of conveyance which I shall not recite. It is enough to say that some of it goes to discredit Dr. Pyle, while much of it directly tends to sustain the transaction as fair and honest. Taking the evidence as a whole, I am of the opinion that it fully warrants the conclusion that the conveyance of the land to Davis McKean Contner by Elizabeth Kenney was her free and voluntary act, procured by no improper influence, and untainted by any actual or constructive fraud, and that she executed the deed when in the full possession of her sound mental faculties, in view of her approaching death, and in consummation of a long cherished and fixed purpose.

But were the correctness of this conclusion questionable, still, it seems to me that the great delay of the plaintiffs in proceeding to have the deed annulled should preclude them from redress. *Landsdale* v. *Smith*, 106 U. S. 391, 1 Sup. Ct. Rep. 350. Undoubtedly, they had timely knowledge of the nature of the relationship which had so long existed between Elizabeth Kenney and Mr. Contner. They have put in evidence several letters written by him to members of John Kenney's family, the first of so early a date as August 3, 1857, and the last dated July 10, 1874, and those letters reveal plainly enough his footing with Elizabeth Kenney. The deed, with its disclosure of the consideration, the names of the subscribing witnesses, and the justice of the peace who took Elizabeth Kenney's acknowledgment, was spread upon the records of Mifflin county on June 1, 1874. The letter of July 10, 1874, from Contner to James Kenney gave prompt and full information of the disposition Miss Kenney had made of her estate. Contner therein wrote: "Aunt Elizabeth made no will in writing, but gave me her real estate by a deed of conveyance," etc. He further explained that she desired that her personal estate, which was small, together with "500 dollars of consideration money," should be taken to pay funeral expenses, etc.; and he also frankly informed James that upon his (Contner's) return from Lewistown, "we moved into the house, and Aunt Betsey just boarded and lived with us, * * * reserving but one room in the house for her own use, except where she slept, and that was in our room, until she died." Very soon after Miss Kenney's death, the plaintiffs sent an agent to Mifflin county, who made inquiries touching the conveyance of the land. By reference to the bill of complaint, it will be perceived that the plaintiffs do not pretend that they did not know or then learn every fact affecting the integrity of the transaction, except "information to lead them to suspect that the deed was not properly executed, or that

the said Elizabeth was not competent to make the same." But the plaintiffs do not allege that they applied for information on that subject to either of the subscribing witnesses or to the justice of the peace, nor do they assert that Contner in any manner misled them. Therefore, are they without reasonable excuse for their long delay in bringing suit. *Badger* v. *Badger*, 2 Wall. 87, 95. The lapse of 15 years changed the whole situation to the great prejudice of the defendants. Dr. Worrall, who would have been an invaluable witness, survived Elizabeth Kenney three and a half years, and Mr. Contner lived eleven years still longer, but death had sealed the lips of both before the plaintiffs saw fit to move in the assertion of their claim.

In the case of *Jenkins* v. *Pye*, 12 Pet. 241, which was a suit to set aside a deed by which a daughter, 23 years old, had conveyed all her remainder in real estate, which had belonged to her mother, to her father for a nominal consideration, it was said by Mr. Justice Thompson that "lapse of time, and the death of the parties to the deed, have always been considered in a court of chancery entitled to great weight, and almost controlling circumstances, in cases of this kind;" and in *Godden* v. *Kimmell*, 99 U. S. 201, 210, this principle was reaffirmed, and was applied to a case where 14 years had elapsed from the date of the deed to the filing of the bill. In any view, then, that can be taken of this case, under the proofs, the plaintiffs are not entitled to any relief.

Let a decree be drawn dismissing the bill of complaint, with costs.