MOORE v. NICKEY et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1904.)

No. 1,017.

1. EQUITY—LACHES—SUIT TO RECOVER MINING STOCK.

A suit cannot be maintained in a federal court of equity to recover stock in a mining company under a written contract after a delay of nine years from the date of contract and eight years after complainant made a demand for the stock, where it would have been barred in five years under the law of the state where brought, and the only excuses for the delay are that complainant lived some 300 miles from the office of the company, that during a part of the time the company had ceased working its mine, and that for about four years the contract was lost, it having been recovered more than a year before the suit was brought.

2. SAME—PLEADING.

In a federal court it is not necessary, in order to let in the defense of laches, that a foundation should be laid by any averment in the answer.

Appeal from the Circuit Court of the United States for the District of Montana.

The appellant brought a suit in equity against the appellees to obtain the issuance and delivery to him of certificates of certain shares of the stock of the Britannia Mining Company, and to require the payment to him of certain sums which have been declared as dividends on said stock. The bill alleges: That Gilbert R. Nickey holds 22,163⅔ shares of such stock in trust for the appellant, and that the Britannia Mining Company holds a like number of shares in trust for him, and that dividends in the sum of $6,650 have been declared thereon. That on September 29, 1892, the mining company was organized under the laws of Wisconsin, with a capital stock of $125,000 in shares of the par value of $1 each. That on January 7, 1893, one J. J. Nickey and Joseph O. Hudnutt, who each owned 21,250 shares of the stock of said company, in consideration of the execution and delivery of the joint promissory note of the appellant and Theabauld Schweitzer for $5,000, sold and transferred to them 15,833⅓ shares of said stock. That at the time of the sale Nickey and Hudnutt had not received and did not have certificates for any of said stock, and in consequence thereof no transfer thereof was made, but it was mutually agreed between the parties that such stock should continue to stand in the name of the sellers until demand by or on behalf of the purchasers. That the sellers gave as evidence of such sale an instrument in writing as follows:

"Butte, Montana, Jan. 7, 1893.

"We, the undersigned, for and in consideration of the sum of five thousand ($5,000) dollars to us in hand paid, the receipt whereof is hereby acknowledged, hereby transfer and assign to Charles A. Moore of St. Paul, Minn., and Thea Schweitzer of Butte City, Montana, the undivided one-third (⅓) of our one-half (½) of the Britannia Quartz Lode Mining Claim, situated in the Summit Valley Mining District in the County of Silver Bow, State of Montana, and designated as Lot No. 268 in the official survey of the United States.

133 F.—19

Said one-third (⅓) of the one-half (½) interest to be in the capital stock of the company—the one-third (⅓) of one-half (½) of the capital stock to be transferred consists of all the capital stock less five thousand (5,000) shares of the capital stock of five thousand ($5,000) dollars in case of sale of mine now pending—or in cash in case of sale which is now pending, also one-third (⅓) of one-half (½) of lease to be made to parties now working the mine."

The bill further alleges: That by reason of the mutual mistake of all the parties the instrument did not, in certain respects, conform to their intention. That at the same time an agreement was entered into between the appellant and Schweitzer under which Schweitzer's interest subsequently passed to the appellant and the appellant paid said promissory note. That on or about September 22, 1894, the capital stock of said corporation was increased from 125,000 shares to 350,000 shares of the same par value, and the appellant's holdings were thereby increased from 15,833 shares to 44,333⅓ shares. That prior to June 1, 1896, J. J. Nickey died, and after his death G. R. Nickey, who had full knowledge of the sale to the appellant and Schweitzer, transferred all of the certificates standing in J. J. Nickey's name on the books of said company, amounting to 62,450 shares, and including the stock held in trust by him for the appellant to himself, the said G. R. Nickey, by an indorsement made by himself on the back of said certificates, and he received from the company new certificates therefor, and of such new certificates he transferred 25,000 shares to the appellee Margaret M. Nickey, the widow of J. J. Nickey. That he disposed of an additional 1,500 shares, and that he still retains the balance of such stock, amounting to 35,950 shares. That certificates for 24,200 shares were issued to said Hudnutt, but none of the same was ever delivered. That all of such stock, including that held by Hudnutt as trustee for the appellant, was levied upon and sold under execution in two suits brought against Hudnutt in Milwaukee county, Wis., one of which suits was brought by said mining company as plaintiff prior to the increase of its authorized capital stock; and that the stock sold in that suit was bid in, 20,000 shares by the mining company, which it still holds, and 1,250 shares by one Emil Lenicheck. That the other of said suits was brought after the increase of the capital stock by G. R. Nickey as plaintiff, and the stock so sold, amounting to 2,950 shares, was bid in by him, for which he received from the mining company new certificates, which he still holds. That no summons or other notice was ever served personally upon the defendant in said actions, nor was there in either of them any attachment of the property of the defendant therein prior to judgment. That in connection with the second of said actions there was prosecuted a garnishee proceeding, but that it does not appear from the record that proof was made, or that the fact was that personal service of summons could not be made within the state of Wisconsin either before or within 10 days after the service of the garnishee defendant. That each of said judgments and all subsequent proceedings thereon were and are absolutely void. That in the year 1901 dividends amounting to 15 per cent. of the par value of such stock were declared and paid to G. R. Nickey upon all such stock held by him. That proper demand has been made for the transfer, issuance, and deliverance of certificates of stock owned by the appellant, and for the payment to him of the dividends thereon declared. That the stock is of the reasonable market value of $1 per share. Schweitzer and Hudnutt, who were parties defendant to the bill, made no answer thereto. G. R. Nickey, Margaret M. Nickey, and John J. Berky, as administrator of the estate of J. J. Nickey, deceased, answered, denying in the main the essential averments of the bill, as did the Britannia Mining Company. Upon the issues joined testimony was taken, and thereupon the court, without making findings of the facts, entered a decree dismissing the bill.

John A. Shelton, for appellant.

Geo. W. Stapleton, Guy W. Stapleton, B. S. Thresher, and W. A. Pennington, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the facts, delivered the opinion of the court.

It is assigned as error that the trial court held that by the testimony produced on behalf of the appellant he had not established by clear and satisfactory evidence that the bill of sale of January 7, 1893, by the mutual mistake and inadvertence of the parties, did not correctly express their intention, and that he had not shown that it was the intention of the parties to that instrument to thereby evidence the sale by J. J. Nickey and Joseph C. Hudnutt to the appellant and Schweitzer of one-third of one-half of 100,000 shares, less 5,000 shares, of the capital stock of the Britannia Mining Company. There are no findings and no opinion in the record, and we have no means of knowing what the court held concerning the effect of that instrument, or upon what grounds the bill was dismissed. As we read the instrument, we think it is reasonably clear from its terms, and without the aid of extraneous evidence, that, notwithstanding that it purports to sell an undivided one-third of one-half of the Britannia quartz lode mining claim, it was the intention of the parties to transfer, not an interest in the claim, but stock in the mining company, which at that time had an option on the claim, and shortly afterward obtained the title to it. The instrument specifies that the one-third of the one-half interest so transferred is to be "in the capital stock of the company." What company? Clearly they meant the company which had taken steps to acquire the claim, and which had issued the capital stock to represent it. If there be any doubt on this point, it is dispelled by the testimony, which shows, and it is not disputed, that the company referred to was the Britannia Mining Company; that in March, 1892, J. J. Nickey and J. C. Hudnutt had a lease and bond for a deed on that claim, and had made certain payments on the purchase price thereof, and that they had entered into an agreement with certain persons residing at Milwaukee, one of whom was G. R. Nickey, to form a corporation to be known as the Britannia Mining Company, with a capital stock of 125,000 shares; and that Nickey and Hudnutt were to relinquish to the company their lease and bond for a deed, and that of the said capital stock Nickey and Hudnutt were to receive one-half of 100,000 shares, less 5,000 shares. The records of the Britannia Mining Company show further that at a meeting of its stockholders held on September 30, 1892, a resolution was adopted requiring the president and secretary of the company to issue and deliver to Hudnutt and Nickey each 11,875 shares, and to one Z. T. Merrill, as trustee, 15,000 shares, upon the release and transfer to the company of the interest of J. J. Nickey and Hudnutt and others of their interest in the Britannia mine. There was proof also that said company never owned any property other than this mining claim.

The principal question, however, is whether or not the appellant is barred by his laches from prosecuting the present suit. The bill was filed on January 30, 1902, more than nine years after the date of the instrument upon which the suit is brought. The appellant seeks to excuse his laches on various grounds, one of which is that the stock was to remain in the names of the vendors until demand. There is nothing in the instrument itself to show that this was the understanding between the parties, nor is there any proof whatever that the sellers of the stock

were to occupy the relation of trustees to the purchasers. The testimony contains the admission of the appellant that in the summer or fall of 1893 he made demand on J. J. Nickey for the stock. Schweitzer, who was a witness for the appellant, testified that the understanding was that the stock was not to be delivered until the corporation obtained title to the mining claim, and that thereafter it was to be delivered upon demand. He testified further that at some time between January and July, 1893, he also made demand for the stock, and that later, in the summer of 1896, after the death of J. J. Nickey, he called upon G. R. Nickey, as an officer of the company, to transfer the stock in question, and for that purpose addressed a letter to him at his address in Milwaukee, and later in the same summer sent him a second similar communication. The appellant further seeks to excuse his delay by showing that with the decline of the price of silver in 1893, operation of the mining property ceased; that the office of the company was at Milwaukee, while the appellant lived at St. Paul; that the secretary of the company died, and that in 1896 the bill of sale was temporarily lost, and the possession thereof was not recovered until September, 1900. We are unable to find in any of these circumstances a sufficient excuse for the appellant's delay. If a temporary loss of the instrument presented an impediment to the institution of the suit, that excuse ceased to exist on September 20, 1900, when the instrument was again in his possession. It was no excuse that mining operations ceased, or that he deemed the property of insufficient value to justify a resort to litigation. There is no allegation or proof that any of the defendants deceived him either as to the extent or the cessation of the mining operations, or the value of the mining property. A party guilty of laches cannot screen his claim from the imputation of staleness merely by alleging an imaginary or unsubstantial impediment to the institution of proceedings to enforce the same. In Johnston v. Standard Mining Company, 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480, the court held that the defense of laches was particularly applicable where the thing in dispute is mining property, which is of uncertain character, and liable to suddenly develop a great increase in value. In that case the plaintiff, after a lapse of seven years, brought suit to enforce an agreement for the conveyance of an interest in mining property. The court held that his delay was fatal to his right to the relief sought. Section 518 of the Code of Civil Procedure of Montana, in reference to causes of the nature of the case at bar, provides, "An action for relief not hereinbefore provided for must be commenced within five years after the cause of action shall have accrued," and the Supreme Court of that state has held that this statute applies as well to equitable suits as to actions at law. Mantle v. Speculator Company, 27 Mont. 473, 71 Pac. 665. Said the court in Godden v. Kimmell, 99 U. S. 210, 25 L. Ed. 431:

"Equity courts in cases of concurrent jurisdiction usually consider themselves bound by the statute of limitations which governs courts of law in like cases, and this rather in obedience to the statute of limitations than by analogy."

But where there is no statute of limitations to govern a case, courts of equity often act upon their own inherent doctrine of discouraging, for the peace of society, stale demands by refusing to interfere where

there has been gross laches in prosecuting the same. In Norris v. Haggin, 136 U. S. 391, 10 Sup. Ct. 944, 34 L. Ed. 424, the court applied to the case the statute of limitations of the state of California and said:

"It is sufficient to say that, as a court of equity is governed by the analogies of the statute of limitations of a court of law, and as the object of this suit is to do what generally could be done at law, namely, recover possession of real estate, and as the plaintiff is equally guilty of the laches, which a court of equity regards in the same spirit it does the statute of limitations, this unexplained delay after the plaintiff had recovered whatever mental capacity he now has must stand as a sufficient bar to the successful prosecution of this suit."

In Curtner v. United States, 149 U. S. 676, 13 Sup. Ct. 985, 37 L. Ed. 890, the court, referring to the statute of limitations of the state of California, by which no action could be brought for the recovery of real property or the possession thereof except within five years after the cause of action accrued, held that, whether the statute be applied directly or by analogy, or the rule in equity founded upon lapse of time and staleness of claim, the delay and laches were fatal to the maintenance of the suit. On the ground of laches the bill was, we think, properly dismissed. In the federal courts it is not necessary, in order to let in the defense that the claim is stale, that a foundation should be laid by any averment in the answer. Sullivan v. Portland, etc., R. R. Co., 94 U. S. 806, 24 L. Ed. 324.

The decree of the Circuit Court will be affirmed.